WALTER G. YANGAS *et al.*, Plaintiffs-Appellants, *v.* CHARLIE CLUB, INC., *et al.*, Defendants-Appellees.

Third District    No. 82—444

Opinion filed March 16, 1983.

Douglas L. Ziech and Roger D. Rickmon, both of Murphy, Timm, Lennon, Spesia & Ayers, of Joliet, for appellants.

Sandra Young, Edward C. Purcell, and Paul Kaulas, all of Purcell & Wardrope, Chartered, of Chicago, for appellees.

JUSTICE ALLOY delivered the opinion of the court:

Plaintiffs Walter G. Yangas, Nancy A. Yangas and Nicholas Yangas appeal from the entry of a directed verdict in defendant Charlie Club, Inc.'s favor, in their negligence action against Charlie Club. Plaintiff Walter Yangas, an invitee of the Charlie Club, had been injured in Charlie Club's parking lot area as a result of action by defendant Richard Palmer, a person who had been refused admittance into the club. Palmer was sued for negligence and wilful and wanton misconduct in his operation of his auto in the parking lot. The basis of the action against Charlie Club was for its asserted failure to control Palmer, who was allegedly intoxicated and disorderly; for its failure to notify the police of Palmer; for its failure to adequately protect Yangas from Palmer; and for its failure to provide security personnel or other supervision in its parking lot. The case was tried before a jury, but the court directed a verdict for Charlie Club at the close of all the evidence, finding the evidence insufficient to give rise to any of the duties alleged by plaintiffs to have been violated by Charlie Club. A verdict against Palmer, for $1,200,000 compensatory and $500,000 punitive, was entered but is not before us on this appeal. In the instant appeal, plaintiffs Yangas argue that the court erred in directing a verdict for Charlie Club. At the center of the issues on appeal is the question of the duties owed by Charlie Club to Yangas. The question focuses upon the reasonable foreseeability of defendant Palmer's actions and Yangas' resultant injuries, on the facts known to Charlie Club.

In reviewing the record, we note that directed verdicts are not to be granted unless all of the evidence, viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors the defendant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) With this in mind, we turn to the pertinent facts. On the evening of November 21, 1979, two men, defendant Richard Palmer and his companion Edward Weiss, entered the premises of the Charlie Club. The Charlie Club is a full-concept health club, included in which is a health club, restaurant and bar. Palmer and Weiss had arrived at the club, parked their auto in the club parking lot, and proceeded to the complex. They entered the outside door and then sought entrance into the lounge and bar area. At the doorway of the lounge and bar area were two club employees whose job it was to check identification of persons

seeking admittance to the bar. The two employees on duty the night of November 21, 1979, were Victor Sebastiano and William Denewillis. Sebastiano and Denewillis denied Palmer and Weiss admittance to the bar. At trial, Denewillis testified that the reasons for not allowing them in were that they appeared intoxicated and Weiss had no identification. Palmer, when asked, had produced identification, but Weiss was unable to do so.

Denewillis testified that both men had definitely been drinking, and he noted Palmer's glassy and bloodshot eyes, and his slightly slurred speech. He testified that Palmer had a normal walk, with nothing unusual in it, and did not stumble when walking. It was Denewillis' opinion on the night in question that Palmer was intoxicated "to an extent." Weiss, too, according to Denewillis had been drinking, as evidenced by glassy and bloodshot eyes and his obnoxious behavior. Sebastiano testified that both men had been drinking, as evident from their eyes. He did not recall either one having any slurred speech or any difficulty walking. Sebastiano stated that he could not tell if the men were intoxicated. After Palmer and Weiss were denied admittance, an argument ensued with the club employees Sebastiano and Denewillis. Sebastiano stated that both men gave the "usual amount of back talk" as they were leaving. Although he did not clearly remember who did what talking, when pressed, Sebastiano indicated that it was Weiss who was the louder and more obnoxious of the two. He testified that Palmer was not really loud, and did not appear to care either way. He could remember nothing unusual about their leaving. Denewillis, the other club bouncer, stated that it was Weiss, not Palmer, who was rude, loud and obnoxious. Palmer, according to Denewillis, was not a problem at all, and created no scene or confrontation. Nor, as noted previously, did he notice anything unusual about his walk or about him as he left the premises. Denewillis admitted his belief, on the night in question, that Palmer and Weiss had driven to the Charlie Club, and he stated that he felt that anyone who has had too much to drink is a danger when driving.

Neither Sebastiano, Denewillis, nor any other Charlie Club employee took any action respecting Palmer and Weiss as they left, or immediately thereafter. No call to the police was made concerning them, nor did anyone follow the pair to the parking lot nearby. It is also conceded that there was no club supervision of the parking lot, and no security personnel there. The evidence indicated that Palmer and Weiss left the clubhouse and proceeded to the parking lot and Palmer's vehicle. As they were leaving the parking lot, there was a near collision with a vehicle in which plaintiff Walter Yangas was a

passenger. Weiss, a passenger in the Palmer auto, got out of the auto and began yelling at Yangas and the driver of that other auto. Yangas then got out of the auto, whereupon Weiss got back into the Palmer auto, which then proceeded toward Yangas' side of the other vehicle. Yangas attempted to get back into the auto, but before he was fully in, and with his right leg still outside the car, his auto was struck by the Palmer auto, on the passenger side, pinning Yangas' leg. The Palmer vehicle, according to testimony, was going 25 to 30 miles per hour at impact. Yangas, as a result of the accident-attack, suffered serious and permanent injuries to his leg, which eventually resulted in the loss of the leg below the knee.

Yangas, his wife and child brought suit against Palmer, the driver of the auto, for negligence and wilful and wanton misconduct, and against the taverns which had served Palmer alcohol, under dramshop statutory provisions. They also brought the instant action against the Charlie Club alleging negligence in the club's failures: (1) to protect Yangas from Palmer; (2) to notify the police of Palmer; (3) to supervise the parking lot area; and (4) to provide security personnel in the parking lot area. At the close of all the evidence, the trial court entered its directed verdict in favor of defendant Charlie Club, finding insufficient facts to put Charlie Club on notice of the reasonable foreseeability of Palmer's subsequent conduct in the operation of his auto.

There is no dispute that Yangas was an invitee of the Charlie Club at the time of the incident. It is also not disputed by the parties that Charlie Club's duty, as a tavern-keeper to its invitees, was to take reasonable affirmative action to protect against misconduct of third-parties, when the danger is apparent or the circumstances are such as to put a prudent person on notice of the probability of danger. *Hayes v. O'Donnell* (1979), 76 Ill. App. 3d 695, 697, 395 N.E.2d 184.

The question as to the existence and nature of the duty to take affirmative action hinges, in turn, upon the reasonable foreseeability to the Charlie Club of harm posed by Palmer to invitees in the parking lot. In the instant case, the knowledge of the Charlie Club is limited to that possessed by its two employees, Denewillis and Sebastiano. The evidence is that these men knew that Weiss and Palmer apparently had been drinking, although they knew nothing about how much they had consumed. They knew that Palmer had glassy, bloodshot eyes. Denewillis stated that Palmer appeared intoxicated, but neither employee noticed any problem either man had walking. Weiss, upon being denied admittance, became loud, boisterous and obnoxious, while Palmer was more subdued. He may have given the employees some "back talk," although Denewillis' clear testimony was that

Palmer was quiet and did not present any problem, which is consistent with Sebastiano's testimony about the relative participation of the two men in the argument. Neither employee testified that either man had any difficulty walking or exiting, by the stairs, from the Charlie Club. There was no testimony that Palmer was belligerent or abusive to other patrons, or out of control in any manner in his behavior inside the Charlie Club. Neither was evidence presented indicating that Palmer had previously caused any trouble at the Charlie Club. Even viewing the evidence in its aspect most favorable to plaintiffs, Charlie Club's knowledge was confined to the fact that Palmer, apparently, had been drinking, had bloodshot and glassy eyes, appeared intoxicated, and further that he left, after being told he and his loud and boisterous companion would not be admitted. The evidence does not support plaintiffs' assertions that Palmer was quarrelsome or belligerent toward anyone in the Charlie Club. Plaintiffs contend, nevertheless, that the operation of an auto by an intoxicated person poses the requisite foreseeability of grave harm to others, such that a duty arose requiring the Charlie Club, having knowledge that Palmer appeared intoxicated and would likely be driving an auto, to call the police, or to otherwise protect Yangas in the parking lot, either by supervision there or security personnel.

■ We find the facts in the instant case insufficient to give rise to the duties alleged by plaintiffs to be applicable to the Charlie Club. In so concluding, we emphasize the lack of evidence concerning any prior incidents with Palmer or Weiss, the lack of evidence of knowledge of Palmer's violent or dangerous nature, and the lack of evidence that Palmer was quarrelsome and belligerent. While Palmer had been drinking, as evidenced by his glassy and bloodshot eyes, the extent of any intoxication was unknown, and there was nothing in his conduct or actions which would put a reasonably prudent person on notice that he was likely to injure anyone when operating his auto in the club's parking lot. Absent evidence that Palmer was belligerent and violent, or other indication that he was not in control of himself, either because of anger or intoxication, and thereby likely to commit wrongful injurious acts against others, no duty arose requiring Charlie Club to take affirmative action to protect its patrons in the parking lot or elsewhere. *Nakis v. Amabile* (1981), 103 Ill. App. 3d 840, 431 N.E.2d 1255; *Anderson v. Yellow Cab Co.* (1975), 28 Ill. App. 3d 656, 329 N.E.2d 278; *Hayes v. O'Donnell* (1979), 76 Ill. App. 3d 695, 395 N.E.2d 184.

■ Plaintiffs, despite protestation to the contrary, do argue for an extension of the common law duty upon tavern-keepers such as

would require them to take affirmative steps to protect their invitees where they have knowledge that someone who has been drinking, and appears somewhat intoxicated, is leaving the premises to operate an auto in their parking lot. The argument is presented that the gravity and foreseeability of harm posed by an intoxicated driver is so great "as to foreclose legitimate discussion by rational and reasonable men." No one can deny, as a general proposition, that intoxicated drivers pose a danger to others. Foreseeability, in an individual case, involves more than broad general propositions. Foreseeability must be determined upon the facts and circumstances of each case, and therein:

> "[I]n determining whether there was a legal duty, the occurrence involved must not have been simply foreseeable, as the plaintiff contends; it must have been reasonably foreseeable. The creation of a legal duty requires more than a mere possibility of occurrence. Negligence as defined in the Restatement (Second) of Torts (1965), section 282, is conduct which falls below the standard established for the protection of others 'against unreasonable risk of harm.' Harper and James, in their Law of Torts, observe: 'Not what actually happened, but what the reasonable prudent person *would then have foreseen as likely to happen,* is the key to the question of reasonableness.' (2 Law of Torts (1956), sec. 16.9, at 929.)" (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375-76, 308 N.E.2d 617.)

In the instant case, the knowledge possessed by the Charlie Club concerning defendant Palmer, previously set forth herein, was not such that a reasonably prudent person would have foreseen as likely his subsequent improper and injurious operation of his auto in the parking lot. That intoxicated drivers are much more likely to be involved in traffic accidents than those not intoxicated does not establish the reasonable foreseeability to Charlie Club of Palmer's subsequent wrongful and injurious operation of his auto in the instant case. Nor does Denewillis' agreement with the general proposition establish that he viewed Palmer as a danger to patrons in the parking lot.

■ Furthermore, the question of the existence of a legal duty is a question of law, for the courts, based on questions apart from foreseeability alone. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375.) If we were to impose the duties alleged by plaintiffs to exist, the result would be that tavern-keepers, as well as other business establishments, faced with persons who appeared in Palmer's condition, would be required to take affirmative actions to protect their patrons using a business parking lot where that person might be operating an auto. Whether such affirmative action be the notification of police, or provi-

sion for supervision in the parking lots, the enormous potential manpower and financial burden upon businesses and police departments is obvious.

This is not a case where Charlie Club was aware of any violent or dangerous conduct by Palmer, nor aware that he was intoxicated to the point of not being in control of himself. The evidence is to the contrary, and the likelihood, as opposed to the possibility of injury to others, was not established in this case. To impose the duty here would be to impose it upon all businesses whenever they were confronted with a person on their premises who appeared intoxicated, but caused no problem nor appeared seriously impaired in functioning. We decline to do so. We emphasize, however, that this is not a case where the tavern-owner knows the amount of alcohol consumed, nor is it a case where, from the actions of the person, the tavern-owner should realize that he is in such a state as to likely cause harm and injury in the operation of an automobile.

■■ Finally, absent evidence of prior problems and difficulties in the parking lot area, Charlie Club did not have a duty to provide security personnel in the parking lot. *O'Brien v. Colonial Village, Inc.* (1970), 119 Ill. App. 2d 105, 255 N.E.2d 205; *Taylor v. Hocker* (1981), 101 Ill. App. 3d 639, 428 N.E.2d 662.

For the reasons stated, we affirm the judgment of the trial court entered in favor of defendant Charlie Club, Inc.

Affirmed.

STOUDER, P.J., and SCOTT, J., concur.