JAMES E. MEALEY, JR., Plaintiff-Appellant. v. DANIEL R. PITTMAN, d/b/a Three and Company, *et al.*, Defendants-Appellees (Anthony Piccinelli *et al.*, Defendants).

Third District   No. 3—89—0179

Opinion filed August 31, 1990.

772

Reardon, Orr, Dvorak & Babcock, Ltd., of East Peoria (David A. Dvorak, of counsel), for appellant.

Myers, Daugherity, Berry & O'Conor, Ltd., of Ottawa, and Cassidy & Mueller, of Peoria (Eugene P. Daugherity and David B. Mueller, of counsel), for appellees The Cutlery World and Cutlery Corporation of America.

Dunn, Hayes, Condon & Marsaglia, of Morris (Robert C. Marsaglia, of counsel), for appellee Dolan's Sports, Inc.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff James Mealey appeals from five orders entered in a personal injury action brought in the circuit court of La Salle County. One order entered summary judgment in favor of defendant Daniel R. Pittman. The other four dismissed with prejudice various counts of the amended complaint against defendants Cutlery World, Cutlery Corporation of America, and Dolan's Sports, Inc.

This litigation originated with an incident occurring on March 23, 1985, when plaintiff was injured by defendant Anthony Piccinelli during a fight in the parking lot of the Three & Co. tavern operated by

defendant Pittman. Mealey and Piccinelli, both minors under 21 years of age, had been drinking in the tavern but had not encountered one another there and did not know one another.

About 1:30 a.m., as Piccinelli was going to his truck in the parking lot adjacent to the tavern, he got into an argument with Mealey after which Piccinelli went to his parked truck and removed a device called "karate sticks" or "nunchucks." Nunchucks are two short, wooden sticks connected by a piece of chain which can be whirled with a circular motion and thrown with deadly force. Piccinelli swung the nunchucks over his head and struck plaintiff in the eye, causing a fracture of his cheekbone and nose and the loss of his right eye.

It was not disputed that Piccinelli had never been involved in fights at this tavern or anywhere else prior to this night, that he did not cause any trouble in the tavern this night, and that he was not known to be violent.

Police reports were before the trial court indicating a long history of complaints about minors drinking at Three & Co. and of some property damage occurring in the parking lot and neighborhood of the tavern. Some of those incidents occurred before defendant Pittman purchased the tavern in December of 1984, and some happened after Pittman assumed ownership. The most serious disturbance occurred in February of 1985 when a fight erupted inside the tavern between two groups of adult men who knew one another. On that occasion, the police were promptly called by Pittman.

The night Mealey was injured, Pittman was not told of the parking lot fracas. Mealey was taken to the hospital by a friend, and emergency room personnel notified the police. Five days later, after interviewing a number of witnesses, Piccinelli was arrested and charged with aggravated battery and illegal use of weapons. He subsequently pleaded guilty to the aggravated battery charge and was sentenced to two years' probation.

Mealey has sought recovery on numerous grounds, including a cause of action for violation of the Dramshop Act (Ill. Rev. Stat. 1987, ch. 43, par. 135), which was settled, and a negligence action against Piccinelli, which proceeded to trial and resulted in a verdict for plaintiff of $950,000.

This appeal involves additional counts alleging causes of action against Pittman for premises liability and against Cutlery World, Cutlery Corporation of America, and Dolan's Sports, the manufacturer and distributors of the nunchucks, seeking to recover for strict liability in tort, absolute liability, negligence, willful, wanton or reckless conduct, and Federal Hazardous Substances Act (15 U.S.C. §1261 *et*

*seq.* (1988)) violations. The trial court ruled in favor of defendants as to all those theories. We shall consider each theory of liability separately.

## I. PREMISES LIABILITY

Plaintiff alleged that defendant Pittman owed him a duty to exercise ordinary care in the operation of his business and to maintain the premises in a reasonably safe condition, including the duty to reasonably guard against assaults upon plaintiff, and that defendant failed to provide guards or personnel to protect plaintiff from assaults by other patrons. Plaintiff further alleged that defendant knew or should have known of assaults upon patrons on previous occasions and that he maintained and encouraged an environment where assaults upon patrons would occur in that he failed to supervise the premises to prevent use of alcoholic liquors by minors.

■ The parties do not dispute the applicable law: A tavern keeper's duty to its invitees is to take reasonable affirmative action to protect against criminal attacks when the danger is apparent or the circumstances such that the danger is reasonably foreseeable (*Yangas v. Charlie Club, Inc.* (1983), 113 Ill. App. 3d 398, 447 N.E.2d 484) and when the burden of preventing such attacks can reasonably be placed on the defendant (*Getson v. Edifice Lounge, Inc.* (1983), 117 Ill. App. 3d 707, 453 N.E.2d 131). Foreseeability must be determined from the facts and circumstances of each case. *Getson v. Edifice Lounge, Inc.*, 117 Ill. App. 3d 707, 453 N.E.2d 131.

■ According to the affidavits and depositions in the record, Piccinelli had done nothing to place Pittman on notice that Piccinelli might be prone to assault or fight other patrons of the tavern or otherwise behave in a violent manner. Plaintiff argues that it was, however, reasonably foreseeable that minors to whom the liquor was served would be a group of people "possessed of the propensity to cause harm." As best we can determine, there was no evidence of trouble caused by the minors who allegedly frequented the tavern during the time Pittman owned it which could be said to have put Pittman on notice of the danger which plaintiff encountered.

The only disturbance at the tavern after defendant purchased the business involved a dispute described above between two groups of adults, not minors. Pittman testified that it was legal to allow minors in the tavern but not to serve them alcoholic beverages, and a police officer corroborated this testimony. Thus, minors on the premises did not have an illegal status, and, like the motorcycle gang in *Getson v. Edifice Lounge, Inc.*, cannot be considered dangerous *per se*, in the

absence of some prior troublemaking conduct.

■ Plaintiff also contends that there was evidence that minors were drinking in the tavern that night and that beer was both sold and given to minors illegally. Plaintiff then reasons that this was a "condition" of the premises "conducive to trouble" and was sufficient to establish a duty owed by Pittman to patrons to take reasonable care and vigilance to prevent *injury*. Plaintiff relies upon *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405, 461 N.E.2d 616, for its holding that the existence on the premises of a group of "rowdy, drunkers, drug users" was sufficient advance warning of potential trouble to give rise to a duty to protect the patrons at a concert. The concert featured a rock band named "AC/DC," and the police chief testified that he had checked at other locations where the group had performed and learned that the band had attracted persons who are rowdy and troublesome.

Unlike *Comastro*, there was no evidence here of specific problems with minors fighting or causing trouble at Three & Co. before the night plaintiff was injured.

Plaintiff relies heavily upon those cases where a history of prior criminal attacks was held to give the possessor of the premises notice that such attacks are reasonably foreseeable, thereby imposing a duty to protect invitees. One such case is *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497, where the continuing presence of hoboes and vagrants around a railroad platform in 1938 was sufficient to support a judgment for a passenger who was beaten, robbed and raped while waiting for a train. In *Haynes v. Chicago Transit Authority* (1978), 59 Ill. App. 3d 997, 376 N.E.2d 680, the plaintiff was injured in a criminal assault in a CTA station where there had been a holdup three months earlier and crimes at nearby stations more recently. Again the court found sufficient evidence to sustain a verdict for plaintiff. We are doubtful that the circumstances giving rise to a duty to the traveling public in those cases can be equated with the circumstances arising with regard to the parking lot of a tavern used by patrons of that tavern. In any event, the history of problems at the Three & Co. tavern would not constitute notice of danger as a matter of law.

■ The record includes police reports of 14 calls related to Three & Co. tavern. Nine calls were dated between 1977 and November of 1984, prior to the time Pittman purchased the tavern. There is no evidence that Pittman knew of those events.

The remaining five police reports involved complaints received after Pittman purchased the tavern. Three were reports that minors

were drinking in the tavern; two of these were anonymous. One report involved a fight between some adults, as mentioned above, and one, dated March 1, 1985, was a raid where eight minors and a bartender were arrested in the tavern for illegal sales to minors. This evidence establishes that the tavern has had an ongoing problem with patronage by minors, but it does not establish notice to Pittman that patrons were at risk of being criminally attacked in the parking lot as a result of the illegal consumption of alcoholic beverages by minors.

■ As we held in *Yangas v. Charlie Club, Inc.*, it would be unreasonably burdensome to impose on all tavern owners a duty to patrol and supervise their parking lots in order to protect their patrons from possible criminal attack in the absence of a reasonably foreseeable danger of injury.

■ The question of the existence of a legal duty here is a question of law. (*Yangas v. Charlie Club, Inc.*, 113 Ill. App. 3d 398, 447 N.E.2d 484.) We conclude that no duty arose under the circumstances of this case, and the trial court order granting summary judgment to Pittman will be affirmed.

### II. PRODUCT LIABILITY

Plaintiff sought to recover for product liability against Dolan's Sports, Inc., the manufacturer of the nunchucks, Cutlery World, owner of the retail store which sold the nunchucks to Piccinelli, and Cutlery Corporation of America, the distributor who provided the nunchucks to the retailer.

The complaint included counts against each defendant asserting theories of negligence, strict liability, and willful and wanton conduct, all arising out of the defendants' failure to warn of the dangerous propensities of the product. Plaintiff alleged, *inter alia*, that the device known as nunchucks as constructed and used was an extremely dangerous and deadly weapon capable of causing serious personal injury or death, and that the danger was not obvious or readily apparent to users or bystanders due to its small, innocent appearance and the general public's lack of familiarity and knowledge of the purpose, use and dangers of the device. Plaintiff further alleged that the device was unreasonably dangerous from the time it left defendants' control until the time plaintiff was injured because of one or more conditions, including the lack of warning or instructions; that defendants knew or should have known of the danger and yet failed to warn or instruct; and that plaintiff was seriously injured as a direct and proximate result of one or more of the unreasonably dangerous conditions alleged. There were no allegations of defective design or manufacture.

■ Although all parties present numerous arguments relating to the causes of action arising out of the alleged duty to warn asserted by plaintiff, the trial court's dismissal of those counts was a correct application of the rule that there is no duty to warn of the potential for injury resulting from common propensities of a product which are open and obvious. Many cases have so held. See, *e.g.*, *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465 (no duty to warn that electricity will arc from a power line to a steel radio antenna and tower installed in close proximity to electrical wires); *Pitts v. Basile* (1966), 35 Ill. 2d 49, 219 N.E.2d 472 (no duty to warn that darts thrown at a person will cause injury); *Taylor v. Gerry's Ridgewood Inc.* (1986), 141 Ill. App. 3d 780, 490 N.E.2d 987 (no duty to warn that a loaded revolver will fire when the trigger was pulled during a game of Russian roulette).

Plaintiff defines the nunchuck device as a "martial arts weapon," a description which admits the self-evident danger from use of such a weapon against another person. Furthermore, it is common knowledge that injury will result from a hard object forcefully striking a person in the eye.

In summary, we conclude that plaintiff failed to state a cause of action for negligence, strict liability in tort or willful and wanton misconduct based upon defendants' failure to warn of the potential dangers from use of nunchucks. We so conclude for the simple reason that there was no duty to warn of the weapon's open and obvious propensity to harm if used to strike another person in the face and eye.

### III. ABSOLUTE LIABILITY

■ ■ Plaintiff also contends that it was error to dismiss those counts which alleged defendants' absolute liability for manufacturing, distributing, and selling ultrahazardous instrumentalities. Illinois does recognize absolute liability relating to certain instrumentalities that are inherently dangerous, such as explosives, high voltage electrical current, large animals, and toxic chemicals, but such liability has not been recognized with regard to devices which are dangerous only when used improperly such as a trampoline (*Fallon v. Indian Trail School, Addison Township School District No. 4* (1986), 148 Ill. App. 3d 921, 500 N.E.2d 101) or a steel spike (*Cole v. Housing Authority* (1979), 68 Ill. App. 3d 66, 385 N.E.2d 382). Just as was the case in *Cole*, we conclude that, as a matter of law, the device in question, the nunchucks, was not an inherently dangerous instrumentality when used as intended. The danger arose out of the misuse of the nunchucks when Piccinelli intentionally used the device as a weapon to at-

tack an unarmed antagonist. The device became dangerous solely as a result of his action. Therefore, no error occurred in dismissing the absolute liability counts of the complaint.

### IV. FEDERAL HAZARDOUS SUBSTANCES ACT VIOLATION

▄▄▄ Plaintiff alleged that the nunchucks are a hazardous substance regulated by the Federal Hazardous Substances Act (15 U.S.C. §1261 *et seq.* (1988)). The statute cited by plaintiff simply does not cover a device like nunchucks, and plaintiff cites no regulations which might bring such a device with the statutory scheme. We conclude that the dismissal of the counts alleging Federal violations was not error.

### V. PROCEDURAL ISSUE

▄▄▄ Finally, plaintiff argues that the trial court erred in refusing to rule upon plaintiff's motion for summary judgment on the product liability issues. Since we have held that the complaint did not state a cause of action upon any of the product liability theories alleged, any error in failing to rule upon plaintiff's motion for summary judgment becomes moot. In other words, plaintiff is not entitled to pursue his request for summary judgment when he has failed to state a cause of action initially.

In conclusion, we hold that the trial court did not err in entering summary judgment for defendant Pittman on the premises liability count and also did not err in dismissing the remaining counts as we have indicated above. The orders of the court are affirmed.

Affirmed.

HEIPLE, P.J., and SCOTT, J., concur.