KAZIMIR IGNARSKI, Ex'r of the Estate of Charles N. Ignarski, Plaintiff-Appellant, v. ALEX S. NORBUT et al., Defendants-Appellees.

First District (6th Division)   No. 1—93—3253

Opinion filed March 17, 1995.

A. Denison Weaver and Thomas J. Gorman, both of Chicago, for appellant.

Alex S. Norbut, of Chicago, for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

Kazimir Ignarski (plaintiff), executor of the estate of Charles N. Ignarski (Charles), filed a single-count legal malpractice complaint against Alex S. Norbut and Norbut & Associates, Ltd. (defendants), alleging that Charles' personal injury action was dismissed because defendants failed to name the proper party within the applicable two-year limitations period. The trial court granted defendants' mo-

tion for summary judgment, holding that plaintiff's second amended complaint failed to allege that but for the attorney's negligence, plaintiff would have prevailed in the underlying action.

On appeal, the plaintiff raises the following issues: (1) whether the trial court erred in holding that the complaint failed to allege all the elements of the underlying personal injury action; (2) whether the defendants should be equitably estopped from denying that plaintiff could ever plead the underlying personal injury action because (a) Norbut had previously stated that plaintiff did have a meritorious cause of action, and (b) it was a result of Norbut's negligence that the underlying cause of action was dismissed; and (3) whether the trial court erred in denying plaintiff's motion to file a third amended complaint.

We affirm.

On December 6, 1983, Charles was injured when two youths attacked him and took his wallet as he was leaving a Kentucky Fried Chicken restaurant. The following day Charles retained defendants. On the two-year anniversary date, in the belief that John Heublin owned the restaurant, defendants filed suit against Heublin and caused summons to issue. The summons was returned "Not Found," and over a year later, on December 30, 1986, defendants withdrew as counsel and turned the file over to Charles. Subsequently, another law firm filed a first amended complaint naming "KFC National Management Company" (KFC). This action was later dismissed because it was not filed within the two-year limitations period. Charles died on January 29, 1988.

The instant legal malpractice action was filed on December 7, 1989. On March 13, 1990, defendants filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992))) which stated the complaint did not state a cause of action for legal malpractice because it did not properly allege that but for the attorney's negligence, the plaintiff would have prevailed in the underlying action. According to defendants, the complaint did not state ultimate facts as to why KFC owed plaintiff a duty to protect him from the criminal acts of third parties. The trial court granted the motion, but allowed plaintiff leave to file a first amended complaint. This complaint was likewise stricken and again the trial court allowed plaintiff leave to amend.

Plaintiff filed a second amended complaint on April 29, 1991. On November 18, 1992, defendants moved for summary judgment (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005 (now 735 ILCS 5/2—1005 (West 1992))) based on plaintiff's inability to plead ultimate facts establish-

ing why KFC had a duty to protect the plaintiff from criminal acts of third parties. The parties briefed the issue, and after oral argument the court granted defendants' motion and denied plaintiff's oral motion to file a third amended complaint.

## I

Summary judgment should be granted if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457.) It should never be granted unless the right of the movant is free from doubt. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 464, 430 N.E.2d 1079.) If the affidavits and other materials disclose a dispute as to any material issue of fact, summary judgment must be denied even if the court believes the movant will or should prevail at trial. Summary judgment procedure is not designed to try an issue of fact, but rather to determine if one exists. (*Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 599, 169 N.E.2d 73.) In considering a motion for summary judgment, the court must strictly construe all things filed in support of the motion while liberally construing all things filed in opposition thereto. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398, 415 N.E.2d 397.) If fair-minded persons could draw different inferences from the evidence, the issues should be submitted to a jury to determine what conclusion seems most reasonable. (*Silberstein v. Peoria Town & Country Bowl, Inc.* (1970), 120 Ill. App. 2d 290, 293-94, 257 N.E.2d 12.) Finally, although the plaintiff need not prove his case at the summary judgment stage, he may be required to present some evidence which demonstrates the existence of a triable and genuine issue of fact. *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1058, 473 N.E.2d 444.

The elements of a legal malpractice claim are: (1) the existence of an attorney-client relationship which establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that "but for" the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) damages. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96; *Sheppard v. Krol* (1991), 218 Ill. App. 3d 254, 573 N.E.2d 212; *Claire Associates v. Pontikes* (1986), 151 Ill. App. 3d 116, 502 N.E.2d 1186.) Because legal malpractice claims must be predicated upon an unfavorable result in the underlying suit, no malpractice exists unless counsel's negligence has resulted in the loss of the underlying action. (*Claire Associates*, 151 Ill. App. 3d at 122.) Plaintiff is required to establish that but for the negligence of counsel, he would have successfully prosecuted or defended against the claim

in the underlying suit. (*Sheppard*, 218 Ill. App. 3d at 257; *Claire Associates*, 151 Ill. App. 3d at 122.) Damages will not be presumed, and the client bears the burden of proving he suffered a loss as a result of the attorney's alleged negligence. *Sheppard*, 218 Ill. App. 3d at 257; *Claire Associates*, 151 Ill. App. 3d at 122.

●2, 3 As a result of the foregoing, the plaintiff at bar was required to plead a case within a case. In particular, he was required to plead ultimate facts establishing why KFC had a duty to protect him from the criminal acts of third parties. The sole allegation in the second amended complaint concerning this duty reads as follows:

> "5. That on the day of the occurrence and for a long time prior thereto, National knew by reason of prior incidents occurring on said premises that its business invitees were subject to attacks by third persons frequenting the said premises."

Illinois law regarding a landowner's or occupier's liability for criminal acts of third parties is consistent and well established. In *Rodgers v. Hook-SuperX, Inc.* (1990), 204 Ill. App. 3d 861, 863, 562 N.E.2d 358, the court stated:

> "There can be no liability in court for negligence unless the defendant has breached a duty owed to the plaintiff. [Citation.] Generally there is no duty to protect another against the criminal attacks of third persons. However, an owner or occupier of land in Illinois owes a duty to invitees *on* his premises to reasonably guard against acts of third parties when such attacks are reasonably foreseeable. [Citation.]" (Emphasis in original.)

Generally, foreseeability is established through prior criminal attacks on the premises. Although other avenues exist, such as where the owner or occupier allows a condition to exist which facilitates the crime (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358; *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472; *Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433) or where the landlord has voluntarily undertaken to provide security measures but performs the undertaking negligently (*Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038; *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596), the plaintiff does not attempt to impose liability under either of those theories. Therefore, in order to state a cause of action, it was incumbent upon the plaintiff to plead ultimate facts which would establish that either prior incidents similar to the one complained of were known by the landlord to have occurred or some other reason why criminal acts on the premises were reasonably foreseeable.

In *Rodgers*, the court affirmed the trial court's decision granting summary judgment to the defendant store. The court found the store

did not owe a duty to the plaintiff who was mugged in the store's parking lot. The court concluded that the allegations regarding a previous purse snatching and the actions of the two attackers while they were inside the store just prior to the attack were insufficient to make the attack upon the plaintiff reasonably foreseeable. (See also *Mealey v. Pittman* (1990), 202 Ill. App. 3d 771, 559 N.E.2d 1173 (insufficient evidence to show the tavern owner/defendant had notice the plaintiff was at risk of being criminally attacked in the parking lot as a result of the illegal consumption of alcoholic beverages by minors; no duty, therefore, summary judgment properly granted).) The question of the existence of a legal duty is a question of law. *Mealey*, 202 Ill. App. 3d at 777.

In addition to the injury being reasonably foreseeable, it must have resulted from the same risk as was present in the prior incidents of criminal activity. (*Petrauskas v. Wexenthaller Realty Management, Inc.* (1989), 186 Ill. App. 3d 820, 827, 542 N.E.2d 902; *Duncavage*, 147 App. 3d at 97-98.) In the instant case, plaintiff's second amended complaint completely fails to comply with the aforementioned authority. The complaint does not allege any prior criminal activity at all, let alone similar criminal activity. Indeed, the only explanation given in the complaint as to why attacks were reasonably foreseeable is that: "National knew by reason of prior incidents occurring on the premises." Nowhere in the complaint is there a clue as to what the "prior incidents" were or when they occurred. Nor is there any reason to believe that the "prior incidents" involved criminal conduct. In no stretch of the imagination can the second amended complaint be said to set forth ultimate facts which establish a duty to protect invitees from criminal acts of third parties.

Because the duty allegation of the second amended complaint is conclusory and does not allege ultimate facts, plaintiff's reliance on *Schnering v. Midlothian Park District* (1991), 219 Ill. App. 3d 664, 579 N.E.2d 909, is without merit. Although *Schnering* stands for the proposition that when a motion for summary judgment is filed without evidentiary material, the plaintiff may rely on the allegations contained in the complaint to defeat the motion, the court specifically stated that the allegations must be "nonconclusory." *Schnering*, 219 Ill. App. 3d at 671.

Plaintiff also relies upon *Marshall v. David's Food Store* (1987), 161 Ill. App. 3d 499, 515 N.E.2d 134. In *Marshall*, the complaint listed 14 instances of reported criminal activity which had occurred within two blocks of the store within the five months before the plaintiff was attacked. The court held that because the complaint alleged the defendant knew or should have known of these instances,

coupled with the fact the defendant employed a security service, it could be inferred the defendant had notice of potential danger in the store's parking lot. (*Marshall*, 161 Ill. App. 3d at 500-01.) We do not agree with the reasoning employed nor the holding in *Marshall*. More importantly, however, unlike the second amended complaint *sub judice*, the *Marshall* complaint listed 14 specific instances of reported criminal activity. The issue in *Marshall* was not that the complaint failed to allege ultimate facts, but rather whether the ultimate facts alleged (criminal activity occurring within two blocks of the store) were sufficient to create a duty to protect on premises invitees from the criminal acts of third parties. Accordingly, the plaintiff's reliance on *Marshall* is misplaced.

For all of these reasons, it was not error to enter summary judgment. As the trial court appropriately pointed out, not only did the plaintiff fail to come forward with any evidence to support his claim, he could not, after three attempts, plead a cause of action.

## II

Next, plaintiff makes the alternative argument that the defendants should be equitably estopped from denying that the underlying complaint states a meritorious cause of action by virtue of Alex Norbut's conduct. Plaintiff's position is twofold. First, plaintiff points out that it was because of the defendants' negligence (failure to investigate and failure to timely name proper defendants) that the underlying action was never allowed past the pleading stage. Plaintiff argues in essence that Norbut is using his own negligence as a shield from liability. Second, plaintiff notes that at defendant Norbut's deposition, the following took place:

"Q. [MR. WEAVER, plaintiff's attorney]: As a result of that research, you elected to go ahead and file suit, is that correct?

A. Yes.

Q. That's why you filed the lawsuit, because as a result of your research, you thought it was a meritorious claim, and you thought it was worth filing or pursuing, correct?

A. Yes."

From this, the plaintiff reasons that the defendants should not now be allowed to deny what Norbut had previously admitted. For the following reasons, we conclude that both arguments are without merit.

■ As previously stated, the plaintiff failed to plead a case within a case. In particular, because the second amended complaint did not contain ultimate facts as to why KFC owed plaintiff a duty of protection, it did not satisfy the proximate cause requirement (*i.e.*, but for the attorney's negligence, plaintiff would have prevailed in the

underlying action). Plaintiff, however, essentially seeks to dispose of the proximate cause requirement. In attempting to do so, plaintiff ignores Illinois case law which has repeatedly rejected this position. In *Sheppard* (218 Ill. App. 3d 254, 578 N.E.2d 212), the defendant was injured at work by an unidentified and allegedly defective forklift. The defendant attorney was retained to investigate and file a product liability action against the manufacturer of the forklift. The complaint alleged that the attorney never investigated the facts, never identified the manufacturer, and failed to institute legal proceedings. Subsequently, plaintiff's employer disposed of the forklift, making it impossible to prosecute the claim. The trial court dismissed plaintiff's complaint because it did not plead, and plaintiff could not prove, that he would have prevailed in the product liability suit "but for the defendant's negligence." In affirming the trial court's dismissal, this court rejected the plaintiff's argument that defendant's negligence should absolve the plaintiff of his responsibility to identify the forklift manufacturer. *Sheppard*, 218 Ill. App. 3d at 258; see also *Beastall v. Madson* (1992), 235 Ill. App. 3d 95, 600 N.E.2d 1323; *Cook v. Gould* (1982), 109 Ill. App. 3d 311, 440 N.E.2d 448.

Nor does *Dunavan v. Calandrino* (1988), 167 Ill. App. 3d 952, 522 N.E.2d 347, or *Kohler v. Woollen, Brown & Hawkins* (1973), 15 Ill. App. 3d 455, 304 N.E.2d 677, upon which plaintiff heavily relies, obtain a different result. In *Kohler*, following a hearing, an arbitrator made an award which was subsequently vacated in the circuit court upon the sole ground that the demands for arbitration were not filed within the proper limitations period. The trial court decision was affirmed on appeal and a petition for leave to appeal in the supreme court was denied. Subsequently, a legal malpractice complaint against the defendant attorneys was filed alleging the attorneys negligently and carelessly failed to file demands for arbitration within the applicable limitation period. The trial court did not address the validity of the award. Rather, the trial was conducted upon the theory that if the claims for arbitration had been filed in time, the arbitrator's awards would be in effect and that such awards were lost by reason of the alleged negligence of the defendants. The trial court subsequently found for the plaintiffs and entered judgment against the defendants. In response to the defendant's contention that the plaintiff did not prove a "case within a case," *i.e.*, the validity of the underlying award, the *Kohler* court stated:

> "Defendants, having prosecuted the claims for arbitration and procured the awards, come within the rule that they are estopped to deny a state of fact procured through their own conduct and acts. [Citation.] It appears that the defendants continued to assert

the validity of the awards throughout the proceedings before the arbitrator, in the circuit court and in the Appellate Court and until the denial of leave to appeal by the Supreme Court. Estoppel is defined as a bar or impediment raised by the law precluding a party from alleging or denying a state of facts as a consequence of his previous allegations or conduct. (Black's Law Dictionary.) It was not error to admit the arbitrator's awards into evidence." (15 Ill. App. 3d at 458.)

Unlike *Kohler*, the underlying personal injury action in the instant case was dismissed in its initial pleading stages without an evidentiary hearing. As a result, we fail to see how *Kohler* is analogous.

In *Dunavan*, the plaintiff contended that he should be excused from pleading and proving the validity of the underlying personal injury claim because the defendants had represented to him that he had a valid cause of action. Plaintiff further claimed that defendants tried to string him along in order to limit their liability. Relying on *Kohler*, the *Dunavan* plaintiff argued that the defendants should be estopped from denying the validity of plaintiff's underlying personal injury claim. Although the *Dunavan* court ultimately concluded that the plaintiff's underlying complaint did state a cause of action, it rejected the plaintiff's estoppel argument by stating:

"In the case before us, it appears that the defendants did little more than file a complaint on behalf of the plaintiff. Although the case eventually came before this court on the issue of whether defendants had named the proper party [citation], argument was not had on the merits of the claim. This distinguishes the instant case from *Kohler*." (*Dunavan*, 167 Ill. App. 3d at 962.)

Rather than supporting the plaintiff's argument, *Dunavan* completely supports a refusal to apply an estoppel to the instant case. Although Norbut gave an affirmative answer when questioned whether the lawsuit was meritorious and worth pursuing, we find it difficult to understand how or why he would have responded in any other fashion. More importantly, however, Norbut's response was his subjective opinion. Such a general conclusion should not be considered so all conclusive. (See *Molden v. Reid* (1990), 200 Ill. App. 3d 495, 558 N.E.2d 239 (bare conclusions of law and general denial did not amount to a meritorious defense in a petition for post-judgment relief).) Because Norbut's statement was not factual, it did not amount to a judicial admission. Plaintiff offers no authority whatsoever as to why the doctrine of equitable estoppel should apply to Norbut's deposition testimony. Therefore, we conclude that the doctrine of equitable estoppel was in no way a bar to the court's entry of summary judgment in favor of defendant.

## III

Plaintiff's final contention is that the trial court abused its discretion in denying plaintiff leave to file a third amended complaint. The oral request to file a third amended complaint was made immediately after the trial court entered summary judgment. While the record does not contain a written motion or a proffered third amended complaint, the following colloquy occurred:

"THE COURT: This malpractice case has been pending for nearly four years and you're telling me that in four years you haven't had sufficient time to investigate the proper allegations of prior incidents? You're telling me the police department doesn't have records of prior incidents with regard to this?

[Plaintiff's counsel]: *** I subpoenaed the police department. *** They said all records, at the time [the] subpoena went out, they said all records prior to [1983 and 1984] have been destroyed under their document destruction program, okay. So, I can not get any records from the police department.
***
THE COURT: Let me ask you this. The case law says that amendments should be allowed if there's a possibility that the amendment will cure the defects.
***
Now, you're telling me that there is no way that you are capable of acquiring the factual information which is going to lead to ultimate proof.
***
[Counsel]: All I said, I cannot get the records from the police department because under their document destruction policy they don't keep those records."

The trial court then inquired as to what facts the third amended complaint would contain regarding prior criminal acts occurring on the premises. Counsel responded:

"I think I can obtain affidavits, affidavits of the police commander who's in charge of that district at the time who will establish so forth and so on.
***
I can probably secure the deposition, if I can find him after this length of time, of the managers of the restaurant or the kids who worked in the restaurant, so forth and so on. All I'm asking the Court is to give me thirty days or forty-five days for leave to file an amended complaint."

In *Mendelson v. Ben A. Borenstein & Co.* (1992), 240 Ill. App. 3d 605, 618-19, 608 N.E.2d 187, a case also involving an oral motion to file a third amended complaint, the court stated:

"Regardless of whether we treat plaintiff's attempt to amend as brought pursuant to section 2—616(a) of the Code of Civil Procedure, which permits amendments '[a]t any time before final judgment *** on just and reasonable terms' (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(a)), or under section 2—1005(g), which permits amendments '[b]efore or after the entry of a summary judgment *** upon just and reasonable terms' (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(g)), our inquiry is the same: whether the circuit court abused its discretion in denying leave to amend. (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 586 N.E.2d 1211.) This determination requires us to evaluate the following four factors established to address this issue in *Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 437 N.E.2d 774, and adopted by our supreme court (see *Loyola Academy*, 146 Ill. 2d at 273, 586 N.E.2d at 1215-16): (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified.

Under the first element, plaintiff's failure to tender his third-amended complaint or include it in the appellate record significantly diminishes our ability to determine whether the proposed amendment would provide plaintiff with a viable theory against defendant. Indeed, as defendant argues, plaintiff's omissions constitute a waiver in this court of plaintiff's right to have the denial of leave to amend reviewed. [Citation.]"

Like *Mendelson*, the plaintiff *sub judice* failed to tender a proposed third amended complaint. More importantly, however, he did not even attempt to articulate facts to be included in the third amended complaint. Rather, without complying with Supreme Court Rule 191(b) (134 Ill. 2d R. 191(b)), he requested additional discovery.

■ Implicit in elements two (whether parties would be prejudiced by the amendment) and three (whether the proposed amendment is timely) is that there be a proposed amendment. When all that has been requested is additional discovery and leave to file a complaint containing facts not yet known, further inquiry into these elements is all but impossible.

Regarding the fourth factor (previous opportunities to amend), we note that we are not dealing with newly discovered evidence or a change in legal theory. The request was for leave to engage in further discovery and to file an amended complaint based upon facts that may or may not be obtained.

The underlying criminal assault took place in 1983. Nine years later and four years after filing the malpractice action, the plaintiff

has yet to ascertain facts to support his claim. When faced with summary judgment, instead of filing a Rule 191(b) affidavit, plaintiff chose to proceed to brief and argue the motion. After summary judgment was entered and the oral motion to amend was denied, plaintiff chose to appeal rather than attempt to proffer a third amended complaint. We cannot, under these circumstances, find the court's denial of leave to amend was an abuse of discretion.

For all of the aforementioned reasons, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA, P.J., and ZWICK, J., concur.