KATHY PETRAUSKAS, Plaintiff-Appellant, v. WEXENTHALLER REALTY MANAGEMENT, INC., *et al.*, Defendants-Appellees.

First District (5th Division) No. 1—87—2760

Opinion filed July 28, 1989.

Stephen E. Vargo, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, Steven M. Puiszis, Gregory B. Bolduc, and Robert G. Black, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Kathy Petrauskas, appeals from the dismissal with prejudice of her amended three-count complaint for failure to state a cause of action. We address the issue of whether the allegations of plaintiff's complaint state a cause of action for negligence, wilful and wanton misconduct, and violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 et seq.). We affirm.

The following facts are pertinent to our disposition of this appeal.

Plaintiff filed an amended complaint against defendants, Wexen-

thaller Realty Management, Inc., and Briar Building Partnership, for injuries she sustained when she was raped in her apartment. In count I for negligence, plaintiff alleged she rented an apartment from defendants for the period of November 15, 1984, through April 30, 1986, in a building located at 540 West Briar Place in Chicago, Illinois. Plaintiff alleged that on August 6, 1985, an individual, who was not a tenant, confronted her in a common hallway on the fourth floor of the building and forced her into her apartment. Inside the apartment, she was raped and beaten.

Plaintiff alleged the individual obtained access into the building as a result of defendants' negligence. The building had an exterior fire escape with a door at each floor and the base of the fire escape was at ground level. If the fire escape doors were closed, they could not be opened from the outside. The doors led directly into the common hallways of the building. The fourth-floor hallway was not well-lit and "was conducive to harboring trespassers and intruders." On August 5, 1985, and for an unspecified period of time before that date, defendants tied the fire escape doors at each floor in such a way that they would remain in an open position to ventilate the building. Defendants also left a window open in the laundry room located on the first floor of the building. For an unspecified period of time prior to August 5, 1985, a tenant or tenants of the building complained to defendants that the fire escape doors and the laundry room window were repeatedly left open but should have been kept closed.

Plaintiff alleged that the building was located in a "high crime" area. On information and belief, plaintiff alleged that defendants knew or should have known of an incident one month prior to the attack when a person was fatally shot across the street from the building. Plaintiff also alleged on information and belief that at sometime prior to the attack, an unauthorized person gained access into the building and was escorted from the premises by defendants. Plaintiff did not allege how the person entered the building.

Plaintiff alleged defendants violated sections 39—1, 39—2, 61—19, 61—19.1, 78—43, 78—55, 78—59, 78—61, 96—2, and 99—4 of the Municipal Code of Chicago. Chicago Municipal Code §§39—1, 39—2, 61—19, 61—19.1, 78—43, 78—55, 78—59, 78—61, 96—2, 99—4 (1984).

As a direct and proximate result of defendants' negligent conduct, plaintiff was physically and mentally injured.

In count II for wilful and wanton misconduct, plaintiff added allegations that defendants acted in reckless disregard for plaintiff's safety.

In count III, plaintiff alleged defendants violated the Consumer Fraud and Deceptive Business Practices Act when they made certain misrepresentations of material fact to her and concealed material facts from her.

Defendants filed a motion to dismiss the amended complaint for failure to state a cause of action under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615).

At the hearing on the motion, the trial court dismissed counts I and II because plaintiff did not allege facts which would impose a duty on defendants. The court dismissed count III because plaintiff did not sufficiently allege that defendants' misrepresentations and concealments proximately caused her injury. Plaintiff now appeals.

OPINION

■■ In reviewing the dismissal of an action under section 2—615, the court must accept all well-pled facts and reasonable inferences as true and must interpret the allegations of the complaint in a light most favorable to the plaintiff. (*Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433.) The dismissal should be affirmed if it appears that no set of facts from the complaint could be proven that would entitle plaintiff to relief. *Turner v. Rush Medical College* (1989), 182 Ill. App. 3d 448, 537 N.E.2d 890.

■■ ■ To plead a cause of action for negligence or wilful and wanton misconduct, plaintiff must allege sufficient facts to establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358; *Rabel v. Illinois Wesleyan University* (1987), 161 Ill. App. 3d 348, 514 N.E.2d 552.) Whether defendant owed plaintiff a duty of reasonable conduct is a question of law for the court to determine. (*Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 520 N.E.2d 37.) In determining whether a duty exists, reasonable foreseeability of harm is the primary concern but the court must also consider the likelihood of injury, the magnitude of the burden to guard against the injury, and the consequence of placing the burden on defendant. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.

■■ The Illinois Supreme Court has recently restated the general rule that a landlord does not have a duty to protect tenants from the criminal acts of third persons on the premises. *Rowe*, 125 Ill. 2d 203, 531 N.E.2d 1358.

■■ Initially, in support of counts I and II for negligence and wil-

ful and wanton misconduct, plaintiff argues that defendants' conduct created or substantially enhanced the risk of criminal activity inside the apartment building, relying on *Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038, and *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472. *Phillips* and *Cross* state that a landlord who voluntarily assumed a duty to provide security measures will be liable if he performed negligently and the negligence was the proximate cause of plaintiff's injury. "[T]he duty of care imposed upon a landlord in a voluntary undertaking to provide guard service includes a duty not to create a condition of increased danger to tenants." (*Phillips*, 89 Ill. 2d at 129, 431 N.E.2d at 1041 (discussing *Cross*, 82 Ill. 2d 313, 412 N.E.2d 472).) Neither *Phillips* nor *Cross* supports a general duty on the part of a landlord not to create a condition of increased danger. *Phillips*, 89 Ill. 2d 122, 431 N.E.2d 1038.

◼ In the present case, plaintiff alleged defendants left the fire escape doors and the laundry room window open. These allegations do not reasonably support a theory of liability that defendants voluntarily assumed a duty to provide security measures. Accordingly, the duty not to create a condition of increased danger found in *Phillips* and *Cross* is not applicable to the present case.

◼ A landlord may also be held liable for the criminal acts of third persons when he fails to keep the common areas of his building in a reasonably safe condition. (*Duncavage*, 147 Ill. App. 3d 88, 497 N.E.2d 433.) "Customarily, the landlord's control of the common areas is associated with the obligation to maintain and repair." *Trice v. Chicago Housing Authority* (1973), 14 Ill. App. 3d 97, 100, 302 N.E.2d 207, 209.

In *Duncavage*, plaintiff filed an action on behalf of his decedent, who was a tenant in defendant's apartment building. Plaintiff alleged that a man concealed himself in an unlit area and in the high weeds outside the building. The area was unlit because the lights had either burned out or were inoperable. He chose to enter that particular building because of its dilapidated condition. The man used a ladder defendant stored in the yard to enter decedent's apartment through a window which was incapable of being locked. The man repeatedly raped and sodomized decedent and then killed her. Plaintiff also alleged that, previously, the ladder was used to enter the same window in the same apartment in a burglary. Defendant knew of the burglary from tenant complaints, a personal inspection, and a citation he received from the Department of Inspectional Services of the City of Chicago. Plaintiff also alleged that the building was in violation of

several sections of the building code. The trial court dismissed the complaint for failure to state a cause of action. On review, however, the appellate court focused on the allegations that the lights were burned out or inoperable, that the weeds were high enough for a person to hide in, and that the ladder remained accessible in the yard even though the landlord knew it was used in a previous burglary to enter the same apartment through the same unlockable window. The court found that plaintiff alleged sufficient facts to establish "that defendant breached his duty to reasonably maintain areas of the building under his control." *Duncavage*, 147 Ill. App. 3d at 96, 497 N.E.2d at 437.

As stated in *Duncavage*, "[w]hile a landlord is not an insurer and cannot be held liable for harm done by every criminal intruder [citation], *prior incidents similar to the one complained of and which are connected with the physical condition of the premises may impose a duty of reasonable care.*" (Emphasis added.) (*Duncavage*, 147 Ill. App. 3d at 97-98, 497 N.E.2d at 438, citing *Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47.) The prior criminal activity and the injury to plaintiff need not be of the exact same nature but plaintiff's injury must have resulted from the same risk as was present in prior incidents of criminal activity. *Rowe*, 125 Ill. 2d 203, 531 N.E.2d 1358.

In the present case, plaintiff alleged that the building was in a "high crime" area and that a person was fatally shot across the street from the building. These allegations of criminal activity have no connection to the building. Plaintiff also alleged that a person gained unauthorized entry into the building and did not allege how the person entered the building and did not allege a connection between the physical condition of the building and the entry.

In contrast to *Duncavage* and *Stribling*, plaintiff argues that there is authority for imposing a duty on a landlord when there are no allegations of prior criminal activity, citing *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497, and *Mims v. New York Life Insurance Co.* (1971), 133 Ill. App. 2d 283, 273 N.E.2d 186.

*Neering* is clearly inapplicable to plaintiff's case because it involved what is considered a special relationship between a common carrier and its passenger that gives rise to a duty to protect from criminal activity. (See *Smith v. Chicago Housing Authority* (1976), 36 Ill. App. 3d 967, 344 N.E.2d 536.) The landlord-tenant relationship is not considered a special relationship where such a duty is imposed. (*Rowe*, 125 Ill. 2d 203, 531 N.E.2d 1358.) Therefore, *Neering* does

not support plaintiff's position.

Plaintiff also relies on *Mims*, where a duty was imposed on a landlord although there was no evidence of prior criminal activity on the premises. In *Mims*, a theft occurred when the landlord inspected plaintiffs' apartment shortly before they were moving out to determine whether it had been damaged during the lease term. One of the plaintiffs testified that on the day in question she locked her apartment door before she left. When she returned, the door was open and the landlord's employee was inspecting the apartment. When he left, she noticed some of her property was missing. The employee testified he used a master key to enter the apartment and left the door open during the inspection. After a bench trial, plaintiffs were awarded damages from their landlord. On appeal, the landlord argued that plaintiffs did not prove his negligence was the proximate cause of the loss and that the loss was not foreseeable. The reviewing court, noting that a breach of duty and proximate cause are questions of fact, deferred to the reasonable determination of the trier of fact and would not disturb its finding.

Although plaintiff here relies on *Mims* to impose a duty on defendants, the landlord in *Mims* did not directly challenge the issue of whether a duty existed in the first instance. The court noted only generally that a duty of ordinary care is imposed to guard against injury which may be the foreseeable result of one's act. In light of the general rule that a landlord is not under a duty to protect his tenants from the criminal acts of third parties, it is unclear on what basis a duty was imposed in *Mims*.

Subsequent decisions have either interpreted the duty in *Mims* as imposed under a contractual obligation (see *Beck v. Rossi Brothers* (1984), 125 Ill. App. 3d 874, 466 N.E.2d 1124) or imposed because the landlord acted in an affirmative manner that made it possible for the thief to enter the apartment (see, *e.g.*, *Smith*, 36 Ill. App. 3d 967, 344 N.E.2d 536). The supreme court recently discussed *Mims* but only stated that under the facts, the landlord "had a duty to lock the door" to plaintiffs' apartment. *Rowe*, 125 Ill. 2d at 225, 530 N.E.2d at 1368.

Plaintiff on appeal appears to argue that *Mims* is applicable to the present case because defendants acted in an affirmative manner by leaving the fire escape doors and the laundry room window open. Assuming for the purpose of argument that *Mims* stands for the proposition that a landlord may be liable for his affirmative act that facilitates crime, the decision must be reconciled with *Duncavage*. The action of the landlord in *Duncavage* by storing the ladder in the

yard can also be viewed as an affirmative act. Yet in *Duncavage*, unlike *Mims*, the court focused on the allegations of prior criminal activity in determining that defendant owed plaintiff a duty.

We find that *Duncavage* is more persuasive to the resolution of the case at bar than *Mims*. *Duncavage* involved the review of a motion to dismiss for failure to state a cause of action, as does the present case, and directly confronted the issue of whether defendant owed plaintiff a duty, unlike *Mims*. Therefore, we will follow the reasoning of *Duncavage*.

■■■ Applying *Duncavage* to the present case, plaintiff's allegations do not sufficiently support a finding that defendants owed plaintiff a duty. In *Duncavage*, a duty was imposed on defendant based, in part, on plaintiff's allegations that a prior criminal incident occurred which was connected to the condition of the building and involved the same risk. Plaintiff in this case alleged an unauthorized person entered the building but did not allege a connection between the physical condition of the building and the entry. The allegation falls far short of the allegations in *Duncavage* and *Stribling* where the courts found that the criminal activities were foreseeable and imposed a duty on the landlords.

In *Duncavage*, the court also focused on the allegations that the weeds outside the building were high enough for a person to conceal himself and that the area was unlit because the lights were burned out or inoperable. These allegations indicate that defendant did not maintain and repair the common areas of the building as was his duty. (See *Trice*, 14 Ill. App. 3d 97, 302 N.E.2d 207.) Plaintiff's allegations in this case do not indicate a failure to maintain and repair as in *Duncavage*.

In considering whether a duty exists, a court must examine the likelihood of injury, the magnitude of the burden to guard against it, and the consequences of placing that burden on defendant. Here, there may have been some likelihood of injury but it was not reasonably foreseeable. The magnitude of the burden to guard against the injury would have only required defendant to keep the fire escape doors and the laundry room window closed. The cost would have been minimal. However, the consequences of placing that burden on defendants, and others in their position, would be great. To impose a duty in this case would serve to greatly expand the scope of a landlord's duty almost to the point of abolishing the general rule that a landlord has no duty to protect his tenants from the criminal acts of third persons.

The allegations of plaintiff's complaint are insufficient to impose

a duty of reasonable care on defendants and, therefore, the trial court properly dismissed the negligence and wilful and wanton counts of plaintiff's complaint.

Plaintiff also argues that defendants owe a duty to her based on the alleged violations of several sections of the municipal code. A violation of a city ordinance that is designed for the protection of human life or property is considered *prima facie* evidence of negligence. (*Gula v. Gawel* (1966), 71 Ill. App. 2d 174, 218 N.E.2d 42.) The plaintiff must be within the class of persons intended to be protected by the ordinance and the resulting harm must be of the kind that the ordinance was intended to prevent. (*Mangan v. F.C. Pilgrim & Co.* (1975), 32 Ill. App. 3d 563, 336 N.E.2d 374.) The building code is a public safety measure and a tenant is within the class of persons to be protected under the code. *Gula,* 71 Ill. App. 2d 174, 218 N.E.2d 42.

Defendants argue that plaintiff's allegation that they violated certain sections of the ordinance is conclusory and is not supported by specific factual allegations. (See *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.) We agree with defendants' position.

We find it necessary to discuss in detail only a few of the ordinance sections cited by plaintiff. Section 78—55 requires that "[e]very stairway, inside or outside of the dwelling *** shall be kept in safe condition and sound repair." Section 61—19.1 states that fire escapes must be maintained in "a good and safe condition." Section 78—43 requires that "[e]very public hall *** shall be adequately lighted." Section 99—4 prohibits a building from being "kept, maintained, or operated" in a manner that "shall be the occasion of any nuisance, or shall be dangerous to life or detrimental to health." Chicago Municipal Code §§61—19.1, 78—43, 78—55, 99—4 (1984).

Plaintiff alleged that defendants tied the fire escape doors open, defendants left the laundry room window open, and the fourth-floor hallway was not "well lighted." These allegations do not support the conclusion that the ordinance sections cited by plaintiff were violated. Keeping the fire escape doors open does not support the conclusion that the stairway was not in "safe condition and sound repair" as required under section 78—55 or that the fire escape was not maintained in "good and safe condition" as required under section 61—19.1. The allegation that the hallway was not "well lighted" does not support the conclusion that the hallway was not adequately lighted as required under section 78—43. None of these allegations support the conclusion that the building was a nuisance or "dangerous to life or detrimental to health" as prohibited in section 99—4.

Accordingly we find plaintiff's allegations that defendants violated certain sections of the municipal code are conclusory and not supported by facts. Plaintiff has not sufficiently pled a cause of action for negligence based on alleged violations of the municipal code.

Finally, we consider whether the trial court properly dismissed count III of plaintiff's complaint alleging a violation of the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). Section 2 of the Act states:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." (Ill. Rev. Stat. 1985, ch. 121½, par. 262.)

The Consumer Fraud and Deceptive Business Practices Act has been applied to the landlord-tenant relationships. *Duncavage*, 147 Ill. App. 3d 88, 497 N.E.2d 433; *Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 457 N.E.2d 1335.

In count III of her complaint, plaintiff realleged most of the allegations from the negligence and wilful and wanton misconduct counts and added the following allegations. Plaintiff alleged she was a consumer and defendants conducted a trade or commerce within the meaning of the Act. Plaintiff alleged that defendants, in violation of the Act, falsely represented to her that the building was safe, that they would hire a doorman, that none of the fire escapes led to the ground level, and that the fire escape doors would be kept closed. She also alleged defendants did not inform her that the building was located in a high crime area or that the building was in violation of the building code sections previously cited. Plaintiff alleged that the misrepresentations and concealments were made for the purpose of inducing her to become and remain a tenant. She further alleged that as a direct and proximate result of the violations of the Act, she was injured.

Although defendants raise several arguments that count III fails to state a cause of action, we will only review whether the trial court properly found that plaintiff did not adequately allege proximate cause.

 A plaintiff can recover damages under the Consumer Fraud and Deceptive Business Practices Act only when his injury is a direct and proximate result of an alleged violation of the Act. (*Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 491 N.E.2d 464.) Where an independent criminal act of a third person intervenes between defendant's act and plaintiff's injury, which causes the injury and without which the injury could not have occurred, the criminal act is a superseding cause of the injury relieving defendant of liability. (*Rowe*, 125 Ill. 2d 203, 531 N.E.2d 1358.) However, if the criminal act is reasonably foreseeable at the time of defendant's act, the causal chain is not necessarily broken. (*Rowe*, 125 Ill. 2d 203, 531 N.E.2d 1358.) The question of whether proximate cause existed is generally one of fact (*Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 374 N.E.2d 203); however, "[a] defendant may escape liability by demonstrating that the intervening event was unforeseeable as a matter of law." *Warren*, 142 Ill. App. 3d at 570, 491 N.E.2d at 476.

 In count III, plaintiff complains of defendants' alleged misrepresentations and concealments which occurred when she signed the lease and "on several occasions prior to the incident." The question is whether the criminal act was reasonably foreseeable at the time defendants made the misrepresentations or concealed information. We find that the criminal act was not reasonably foreseeable as a matter of law. Our analysis of foreseeability concerning counts I and II is applicable here where defendants' alleged violation of the Act was even further removed. Plaintiff has failed to allege facts that support the element of proximate cause and, therefore, count III was properly dismissed.

Affirmed.

MURRAY, P.J., and PINCHAM, J., concur.