THIRD DIVISION 

December 22, 1999

No. 1-97-1138

JOHN AND BERNICE ESHOO, Indiv. and as Special Admr's of the Estate of Taylor Eshoo, Deceased,

Plaintiffs-Appellees,

v.

CHICAGO TRANSIT AUTHORITY, 

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 92 L 7775

Honorable,

Judge Leonard R. Grazian Presiding.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Plaintiffs filed a two-count complaint against the Chicago Transit Authority (the CTA) in response to an electrocution at the CTA Morse Avenue transit station in Chicago.  The complaint alleged negligence in count I and willful and wanton conduct in count II.  Plaintiffs dismissed the willful and wanton count before the case went to the jury in response to a trial court ruling that decedent was an invitee as a matter of law.  The trial court found, as a matter of law, that Taylor Eshoo was an invitee to whom the CTA owed a duty of ordinary care.  The jury was so instructed.  The court refused to instruct the jury on a standard of care defined in Illinois Pattern Jury Instructions, Civil, No. 120.02.01 (3d ed. 1995) (hereinafter IPI Civil 3d), which sets out the duty generally owed to an invitee and to a trespasser and an exception to the duty owed to a trespasser when a dangerous condition on the defendant's property presents a risk of death or serious bodily harm.   The jury found for plaintiffs.  The CTA’s motion for judgment notwithstanding the verdict was denied.  The CTA appeals.  We reverse and remand with directions.   

Plaintiffs' son, Taylor Eshoo, was electrocuted on June 27, 1991, when he came in contact with an electrified "third" rail at the CTA Morse Avenue station.  The Morse Avenue station is on the Howard line, now known as the Howard/Dan Ryan or "red" line.  According to testimony, Taylor and three friends, Michael Rosengrant, Peter Anthos and Kenneth Boch, had just accompanied Justin Long, another friend, to Morse Avenue.  Long then went home.  The four boys bought tickets and waited on the Morse Avenue platform for a southbound train.  They planned to ride the train into the Loop, then take an O’Hare train to Harlem Avenue, near where they lived.  

Taylor left the platform to urinate while his friends waited for the train.  He was killed when he came into contact with the "third" rail.  The rail carries 600 volts of electric current.  

The Morse Avenue platform sits between and serves two sets of tracks, one heading north, the other south.  The platform is about one block long and raised about 4½ feet above the tracks.  The electrified rails are on the outside of the tracks farthest from the platform.  The edge of the platform at Morse Avenue is nine feet away from the closest electrified rail.  Passengers enter the station at street level, pay a fare, then climb a stairway leading to the platform.  Passengers do not  cross the tracks to enter or exit trains.  

Taylor and his friends were waiting for a southbound train near the middle of the platform when Taylor decided to leave the platform.  Taylor’s friends did not know that he was leaving the platform, nor did they expect him to do so.  Taylor walked north on the platform.  Stairs at the end of the platform lead to the tracks.  In front of the stairs a sign warns: “Danger, No One Permitted on Tracks Except Employees on Duty.”  There were also at least two signs on the wall opposite the platform.  These signs warn: "Danger Keep Out Electric Current."  Uncontradicted evidence at trial about where his body was found established that Taylor apparently jumped or climbed onto the tracks well short of the stairs that lead to the tracks.

Rosengrant testified that he did not see Taylor leave the platform.  He said that about one minute after he saw Taylor walk north on the platform, he saw Taylor lying face down about 25 feet north of where Rosengrant, Anthos and Boch were waiting for the train.  Rosengrant testified that he did not see signs warning of electric current.  He conceded that he was not looking for signs.  Rosengrant, Anthos and Boch carried Taylor's body down to Glenwood Street.  Glenwood runs parallel to and below the station.  

Anthos’ and Boch’s testimony tracked Rosengrant’s.  Anthos also admitted that he did not see warning signs.  He conceded that he was not looking for signs because he had no reason to do so.  But Boch admitted knowing of the electrified third rail.  He testified he could not imagine Taylor leaving the platform to go on the track bed.  

Justin Long testified under subpoena.  He denied riding the “el” train with Taylor, Boch, Rosengrant and Anthos.  Long also denied speaking with Chicago police about Taylor.  

Plaintiffs introduced evidence of 11 incidents of electrocution at CTA stations during a 10-

year period before Taylor’s death.  Many of these happened where access to the tracks required the trespasser to leave a raised platform, as here.  CTA employees admitted that the CTA was aware that members of the public entered the track bed and came into contact with the electrified rail.  The CTA knew that persons had been electrocuted by the rail.  They placed signs warning of this danger in the stations.   

Frank O’Dowd, the CTA general manager, testified that the signs were posted  to warn the public of the "third" rail.  O’Dowd said CTA policy directed that signs be posted at 50- to 75-foot intervals along both sides of the platforms at each station.  

Charles Arndt, chief of operational graphics and “signage” for the CTA, testified that the signs are not posted at every station.  Arndt said that many stations on the Howard line do not have signs at all.  Arndt testified that there was no policy that mandated posting warning signs.  He testified that the signs at Morse Avenue were posted in response to community complaints about children climbing on the track bed to avoid paying a fare.  Arndt stated that the signs were not meant to be seen by people on the platform but, rather, to keep people from climbing over the outside wall onto the tracks.  Harold Hirsch, vice president of planning for the CTA, confirmed Arndt’s testimony that there was no policy that signs be posted every 50 to 75 feet.    

Other testimony established that trees and bushes hid the signs at Morse Avenue station on the night Taylor was killed.  The CTA conceded that the signs were hidden on that night.  The CTA also admitted that it is responsible for removing the vegetation that obscured the signs..

Ronald Jacob, an engineering consultant on rapid transit safety, testified as an expert witness for plaintiffs.  Jacob testified that, even if the signs had been visible, they were inadequate.  He said that the signs do not warn of the nature of the danger or its consequences, nor do they show where the danger is located.  Jacob also said that the signs were too far away from the platform to adequately warn people standing on the platform.  Instead, he testified that a person would have to walk through the danger to see the sign warning of that danger.

Jacob testified that the CTA should install covers over the electrified rail.  He stated that placing these covers would not be difficult and could be done without moving the rail.  This conflicted with CTA testimony that installing covers would be too costly and cumbersome because the rail would have to be moved.

After trial but before the case was sent to the jury, the trial court found, as a matter of law,  that Taylor was not a trespasser, but an invitee on CTA property.  Plaintiffs then dismissed their willful and wanton claim.  The case was sent to the jury on a negligence theory alone.      

The CTA tendered the long form of IPI Civil 3d No. 120.02.01 as a duty instruction.  This instruction read:

"It was the duty of the defendant Chicago Transit Authority, as an owner of the property in question, to exercise ordinary care to see that the property was reasonably safe for the use of those lawfully on the property.

It was also the duty of the defendant Chicago Transit Authority, as an owner of the property in question, to refrain from willful and wanton conduct which would endanger the safety of trespassers on the property.

However, if the defendant Chicago Transit Authority knew of, or reasonably should have anticipated, the presence of a trespasser in a position where a condition on the defendant's property presented a risk of death or serious bodily injury and that the trespasser would not discover or realize the risk involved, then the defendant had a duty to exercise ordinary care to warn of that condition."

The trial court rejected the long form instruction, finding reference to the duty owed a trespasser inapplicable.  The trial court instead gave the following instruction, proffered by plaintiffs, on the CTA's duty.  This instruction is based on the first paragraph of IPI Civil 3d No. 120.02.01:

"It was the duty of the Chicago Transit Authority, as the owner of the property in question, to exercise ordinary care to see that the property was reasonably safe for the use of those lawfully on the property.  It was the duty of Taylor Eshoo before and at the time of the occurrence to use ordinary care for his own safety."  

The jury was then instructed on the legal definitions of negligence and ordinary care.

The jury returned a verdict for plaintiffs in the amount of $500,000.  The jury found Taylor 50% negligent.  The court denied the CTA's motion for judgment notwithstanding the verdict.

The CTA first argues that since Taylor was a trespasser as a matter of law, the CTA only had to refrain from willful and wanton conduct.  The CTA concedes that Taylor was an invitee while on the platform, but argues that Taylor became a trespasser when he left the platform.  The CTA reasons that Taylor's trespasser status negated plaintiffs' ordinary negligence theory and required plaintiffs to prove that the CTA acted in a willful and wanton manner.  The CTA claims the court erred in finding Taylor was not a trespasser as a matter of law and by not giving IPI Civil 3d No. 120.02.01 in its complete form.  The CTA concludes that the lack of evidence establishing willful and wanton conduct towards Taylor requires judgment be entered for the CTA.  

Plaintiffs contend that the trial court properly ruled that Taylor was an invitee as a matter of law.  Plaintiffs claim that Taylor never lost his invitee status and that Taylor was an invitee when the CTA's duty to warn arose.  Plaintiffs also emphasize that the instruction given allowed the jury to determine Taylor's status.  The instruction referred to the CTA's duty to "those 
lawfully
 on [CTA's] property."  (Emphasis added.)  Plaintiffs claim that this wording allowed the jury to determine whether Taylor's presence on the track bed was lawful, not a trespass.  Plaintiffs appear to argue that,  despite the court's ruling, the verdict shows that the jury also found Taylor was not a trespasser, but an invitee.  Plaintiffs alternatively claim that, even if Taylor became a trespasser when he left the platform, the CTA nevertheless had a duty to exercise ordinary care to warn Taylor of the "third" rail under the holding in 
Lee v. Chicago Transit Authority
, 152 Ill. 2d 432, 605 N.E.2d 493 (1992).

We disagree with both the CTA and plaintiffs that the court could decide Taylor's status as  a matter of law.  The trial court apparently concluded that, since Taylor paid a fare, there could not be a question of fact that he was lawfully on the platform at the time the CTA was under a duty to warn of a dangerous condition that might cause harm.  It is this analysis that apparently leads plaintiffs to conclude it was proper to instruct the jury on the CTA's duty to exercise ordinary care.  The problem with this analysis is that, while Taylor was lawfully on the platform, he was in no peril from the dangerous condition.  Neither the trial court's ruling nor plaintiffs' argument cites to a case holding that an invitee lawfully on premises is entitled to expand the scope of the invitation to include parts of the premises where no one could reasonably argue that he or she was lawfully entitled to be.  See 
Cockrell v. Koppers Industries, Inc
., 281 Ill. App. 3d 1099, 1104, 667 N.E.2d 676 (1996); 
 
Green  v. Jackson
, 289 Ill. App. 3d 1001, 1011, 682 N.E.2d 409 (1997)  (duty owed an invitee extends only as far as the invitation extended to the invitee).  Parts of premises falling in the latter category for passengers on foot, holding a ticket for transportation, come readily to mind: airport runways, for example, and what we have here, railroad track beds.  What plaintiffs can argue, under 
Lee
, is that a duty to exercise ordinary care is owed to a trespasser where it can be shown that the one responsible for the dangerous condition knew of, or reasonably should have anticipated, the presence of the trespasser in proximity to the dangerous condition.  The trial court's ruling in this case relieved plaintiffs of the burden of establishing that the CTA knew of, or reasonably should have anticipated, Taylor's presence in proximity to the dangerous condition.  Plaintiffs did, in fact, present such evidence, but the jury was never instructed that such evidence was an element of the burden of proof that it was required to weigh.    

Where, as here, a plaintiff's status at the time of his injury is disputed or different inferences may be drawn from undisputed facts, the plaintiff's status as invitee or trespasser is a question of fact for the jury.  
Rhodes v. Illinois Central Gulf R.R.
, 172 Ill. 2d 213, 241, 665 N.E.2d 1260 (1996).  The inference to be drawn from the facts in this case, that Taylor was a trespasser at the time of his injury, is persuasive, but not so persuasive that the issue should be taken from the jury.  The trial court clearly erred in finding that Taylor was an invitee as a matter of law.   We must now decide whether the ruling and subsequent instruction are harmless error.  We conclude they are not and remand for a new trial. 

We recognize that not every error in tendering instructions requires a new trial.  
Green
, 289 Ill. App. 3d at 1011.  A trial court's determination of the instructions to be given the jury will not be disturbed absent an abuse of discretion.  
Howat v. Donelson
, 305 Ill. App. 3d 183, 186, 711 N.E.2d 440 (1999).  The test is whether the instructions, considered as a whole, fairly, fully and comprehensively informed the jury of the relevant principles in their entirety.  
Leonardi v. Loyola University
, 168 Ill. 2d 83, 100, 658 N.E.2d 450 (1995).  Judgment will not be reversed 
unless the jury was misled and the faulty instructions prejudiced the complaining party.  
Howat
, 305 Ill. App. 3d at 186; 
Duffy v. Cortesi
, 2 Ill. 2d 511, 119 N.E.2d 241 (1954).  

We believe the instruction here misled the jury and inaccurately stated the law, prejudicing the CTA.  The instruction first prevented the jury from resolving the factual question of Taylor's status.  We find no support in case law, nor do plaintiffs cite to a case, for the proposition that the jury in this case could read "lawfully" in the instruction it received as an invitation to decide that Taylor may have been "unlawfully" on the tracks.  The argument ignores the finding of the trial court that Taylor was an invitee.  That finding took the issue from the jury. 

IPI Civil 3d No. 120.01 defines a trespasser as "a person who goes upon the premises of another without express or implied permission or invitation [or other right]."  IPI Civil 3d No. 120.01.

If the jury had found Taylor was a trespasser, then the CTA would be liable only for willful and wanton conduct, unless the jury found that the CTA had actual knowledge or reason to know that Taylor would come in close proximity to the electrified rail at the Morse Avenue Station.  

The limited instruction omitted established law that triggers a higher burden of proof in case of trespassers, except where dangerous instrumentalities exist on the land and landowners know or have reason to know that trespassers come in dangerous proximity thereto.  See Restatement (Second) of Torts §337 (1965); see also 
Lee
, 152 Ill. 2d at 450-52.  

Plaintiffs alternatively claim that, even if Taylor were a trespasser, the CTA still had a duty to exercise ordinary care to warn Taylor of the electrified rail under 
Lee
, 152 Ill. 2d 432, 605 N.E.2d 493.  Plaintiffs are correct, but the jury was deprived of the instruction that guides it to the conclusion that, under a certain circumstance, a landowner has a duty to exercise ordinary care to warn a tresspasser:

"However, if the defendant Chicago Transit Authority knew of, or reasonably should have anticipated, the presence of a trespasser in a position where a condition on the defendant's property presented a risk of death or serious bodily injury and that the trespasser would not discover or realize the risk involved, then the defendant had a duty to exercise ordinary care to warn of that condition." 

In 
Lee
, the supreme court carved out this limited exception to the duty owed a trespasser.  IPI Civil 3d No. 120.02.01 tracks the 
Lee
 holding.  
Lee
, 152 Ill. 2d at 452. 

The committee comments to IPI Civil 3d No. 120.02.01 refer to 
Lee
, 
stating that a landowner has a duty to exercise ordinary care to warn trespassers of dangerous conditions on the property 
if the landowner knew or had reason to anticipate their presence
.  IPI Civil 3d No. 120.02.01, Comment, at 336.

Here, the evidence tending to show that the CTA knew or had reason to anticipate Taylor's presence and his status was removed from consideration under the limited duty instruction.

The limited instruction here imposed a standard of ordinary care and eliminated plaintiffs' burden to prove the CTA's knowledge or reasonable anticipation of Taylor's presence on the track bed in dangerous proximity to the electrified rail.  We believe the trial court's error requires reversal and remand.  See 
Advincula v. United Blood Services
, 176 Ill. 2d 1, 40, 678 N.E2d 1009 (1996) (trial court's error impacted the plaintiff's burden of proof, the applicable legal standard the jury was to apply and left the jury free to disregard relevant evidence on the standard of care).  

Had the full instruction been given, the jury first would have been directed to decide Taylor's status.  On remand, if the jury finds that Taylor was an invitee, then the CTA owes a duty to exercise ordinary care and the result remains the same.  But if the jury finds that Taylor was a trespasser, the jury must then decide if plaintiffs presented sufficient evidence to show that the CTA "knew or had reason to anticipate" Taylor's presence on the track bed.  Plaintiffs' evidence of earlier incidents may then be weighed by the jury to decide if the CTA had reason to anticipate Taylor's presence
.  Whether the 11 earlier incidents were enough to put the CTA on notice that trespassers came within a dangerous proximity to the electrified rail is a question of fact for the jury. 

We reverse and remand for a new trial consistent with this opinion.  

Reversed and cause remanded with directions.

GORDON and BURKE, JJ., concur.