767 N.E.2d 366 (2002)
328 Ill. App.3d 735
262 Ill.Dec. 906
Antonio SALAZAR, as Administrator of the Estate of Pedro Salazar, Deceased, Plaintiff-Appellant,
v.
CROWN ENTERPRISES, INC., a corporation, Central Transport, a corporation, and GLS Leasco, Inc., a corporation, Defendants-Appellees (Leroy Davis Truck Service, Inc., a corporation, Crown Engineering, Inc., a corporation, and Unknown Owners of 56 East 25th Street, Chicago Heights, Illinois, Defendants).
No. 1-00-3590.
Appellate Court of Illinois, First District, Second Division.
Nunc Pro Tunc December 31, 2001.
March 12, 2002.
*368 Zane D. Smith & Associates, Ltd. (Zane D. Smith, of counsel), Chicago, for Appellant.
Hinshaw & Culbertson (Carlton D. Fisher, Joshua G. Vincent, of counsel), Chicago, for Appellees.
Presiding Justice BURKE delivered the opinion of the court:
Plaintiff Antonio Salazar, as administrator of the estate of Pedro Salazar, deceased, appeals from an order of the circuit court granting the defendants, Crown Enterprise, Inc., Central Transport, Inc., and GLS Leasco, Inc's,[1] motion to dismiss plaintiff's fourth amended complaint, alleging a negligence action based on wilful and wanton conduct by defendants that caused decedent's death, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1998)). On appeal, plaintiff contends that the trial court erred in dismissing his complaint because the trial court relied on prior pleadings in rendering its decision and did not limit itself to the issues raised by his fourth amended complaint. Substantively, plaintiff contends that his complaint was sufficient to state a cause of action against defendants based on the fact that the condition of defendants' property constituted a danger sufficient to rise to the level of wilful and wanton conduct. For the reasons set forth below, we affirm.

STATEMENT OF FACTS
Plaintiff's decedent, Pedro Salazar, an alleged homeless person, was beaten to death by an unknown assailant on March 10, 1997, while trespassing on property owned by defendants located at 56 East 25th Street in Chicago Heights. Decedent was apparently seeking shelter in the vacant building on the property. Plaintiff filed his original complaint on September 17, 1997, alleging ordinary negligence on the part of defendants. After defendants filed a section 2-615 motion to dismiss, plaintiff voluntarily withdrew his complaint and filed an amended complaint. The amended complaint again alleged ordinary negligence against defendants based on a broken, defective, or unlocked door that allowed access to the vacant building on the property. Defendants again filed a motion to dismiss. On June 15, 1998, the trial court granted defendants' motion to dismiss, finding that plaintiff failed to state a cause of action.
On July 31, 1998, plaintiff filed his second amended complaint and, on August 27, 1999, his third amended complaint. Both complaints were substantially similar to plaintiff's amended complaint and again alleged ordinary negligence on the part of defendants based on the defective door. Following each complaint, defendants filed a section 2-615 motion to dismiss. The trial court granted both motions.
*369 On May 12, 2000, plaintiff filed his fourth amended complaint (complaint). In this complaint, plaintiff altered his theory, now alleging wilful and wanton conduct on the part of defendants. Plaintiff based this cause of action upon the entirety of the hazardous conditions on the defendants' premises. He alleged three different types of hazards: structural hazards, sanitary hazards, and social hazards. With respect to structural hazards, plaintiff alleged that the exterior door to the building and the perimeter fence were broken or defective and allowed easy access to the property and building. Plaintiff alleged that defendant had been served with numerous citations for violations of the municipal code and had been served with a complaint in 1997, stating that the structure was dangerous and unsafe because it was abandoned, vacant, vandalized, and open. As a result of this complaint, the building was ultimately demolished on June 30, 1997.
With respect to sanitary hazards, plaintiff alleged that garbage, including food, clothes, beer bottles, etc., were lying around both inside the building and outside, that human waste was evident, and that dumping habitually occurred on the property. According to plaintiff, all of these factors demonstrated a regular and continual use of the property as a habitat. Lastly, with respect to social hazards, plaintiff alleged that there was continuing lawlessness on the property resulting in frequent police and fire department calls and responses with respect to the property. He identified 50 specific complaints dating between 1982 and 1998.[2]
According to plaintiff, the state of disrepair of the property encouraged a lawless social environment, due to easy access from the fence and door and allowed the building to be used as a dwelling place for an extended period of time. Plaintiff also alleged that the fact the building was used as a dwelling was open and obvious due to the existence of various personal items on the property, including inter alia a space heater, chairs, a television, a radio, lamps, a couch, and personal necessity items. Additionally, this state of disrepair, according to the complaint, resulted in an "isolated sub-society populated by the indigent, schooled in the ethics of the streetin which the spoils go to the cunning, the swift and the ruthlessand characterized by violent behavior."
Plaintiff then set forth allegations with respect to defendants' knowledge. According to plaintiff, defendants knew or should have known, in the exercise of ordinary reasonable care, of the condition of the structure and derelict condition of the building via common knowledge that property deteriorates over time and the numerous violation notices they had received, including two notices each of a failure to maintain the exterior door and a failure to maintain the perimeter fence. Because defendants failed to do anything with respect to the condition, plaintiff alleged that this demonstrated defendants' lack of concern and indifference.
Plaintiff also alleged that defendants knew trespassers entered the property in a regular fashion and that they took no action, even the most ordinary, to remedy the situation. According to plaintiff, the basis of defendants' knowledge was premised *370 upon their awareness of the openings in the perimeter fence, the vandalized condition of the gate, the beaten paths across the property, and the piles of garbage visible on the property.
With respect to the elements of defendants' breach of duty and proximate cause, plaintiff alleged that defendants' failure to correct the egregious conditions on the property fostered an illegal community and allowed "this island of lawlessness" to continue unabated. Specifically, plaintiff alleged that defendants "actively countenanced conditions [on the property] which a person of reasonable intelligence and outlook would characterize as dangerous, unsanitary, contrary to the public good, and likely to result in lawless and violent behavior" and allowed the structure on the property to sink "to a condition which invited human habitation characterized by violent and chaotic behavior."
Plaintiff further alleged that on March 10, 1997, decedent entered the property as a trespasser and encountered this dangerous condition, "or confluence of dangerous conditions," and was, as a result, beaten to death. According to plaintiff, defendants consciously failed to use ordinary care to guard against the dangerous and hazardous conditions on the property, which constituted wilful and wanton conduct, and caused decedent's death.
Defendants subsequently filed a motion to dismiss, which the trial court granted on September 13, 2000, stating that there was no just reason to delay enforcement or appeal of the matter. This appeal followed.

ANALYSIS
Plaintiff contends that the trial court erred in dismissing his complaint. The essence of plaintiff's argument appears to be that the trial court relied on issues raised by his three prior complaints (e.g., liability for criminal attacks, foreseeability, and special relationship) in granting defendants' motion to dismiss, rather than the issues raised in plaintiff's fourth amended complaint. According to plaintiff, the only relevant issue was whether the condition of the property constituted a danger sufficient to rise to the level of wilful and wanton conduct by defendants, focusing upon the condition of the premises, defendants' knowledge, and defendants' conduct. As such, according to plaintiff, the questions of liability for criminal attacks, foreseeability, and special relationships were irrelevant. Plaintiff maintains that landowners have a "duty to refrain from allowing the formation of a highly dangerous condition upon their land, a condition which embodied a very grave danger to those people, including trespassers, entering upon the land." Plaintiff argues that he alleged in his complaint that defendants knowingly allowed the property to exist in a dilapidated dangerous condition, which "encouraged its inhabitation by persons of little social inhibition, prone to the violence associated with vagrants, vagabonds and drifters." According to plaintiff, defendants therefore "allowed a terribly dangerous, life-threatening condition to form upon their abandoned land, and responded with utter indifference," clearly constituting wilful and wanton conduct by defendants.
Defendants argue that plaintiff was required to plead facts showing that defendants had knowledge of prior violent attacks on trespassers on the property and facts showing that defendants consciously decided to do nothing about such acts. According to defendants, the "condition" on the property, according to plaintiff, was allegedly the "isolated sub-society" and plaintiff pled no facts showing defendants' knowledge of this condition, no allegations that defendants discovered the condition *371 and ignored it, and no allegations that defendants were aware of any prior criminal attacks made on the property and that defendants disregarded them.
To set forth a cause of action for premise liability, a plaintiff must plead sufficient facts to establish a duty, breach of that duty, and an injury proximately caused by the breach. Petrauskas v. Wexenthaller Realty Management, Inc., 186 Ill.App.3d 820, 825, 134 Ill.Dec. 556, 542 N.E.2d 902 (1989). Whether a duty exists is a question of law. Rhodes v. Illinois Central Gulf R.R., 172 Ill.2d 213, 227, 216 Ill.Dec. 703, 665 N.E.2d 1260 (1996). A landowner's duty to an individual on his premises varies depending on the individual's status on the premises. Rhodes, 172 Ill.2d at 227-28, 216 Ill.Dec. 703, 665 N.E.2d 1260. In the instant case, the only relevant status is that of trespasser as there is no dispute that decedent was a trespasser. A landowner owes a trespasser only a duty to refrain from wilful and wanton conduct. Green v. Jackson, 289 Ill.App.3d 1001, 1011, 224 Ill.Dec. 848, 682 N.E.2d 409 (1997). As stated in American National Bank & Trust Co. v. City of Chicago, 192 Ill.2d 274, 248 Ill.Dec. 900, 735 N.E.2d 551 (2000):
"`"A wilful or wanton injury must have been intentional [with actual or deliberate intent to harm (Bowden v. Cary Fire Protection District, 304 Ill.App.3d 274, 280, 237 Ill.Dec. 918, 710 N.E.2d 548 (1999)) ] or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others ["an utter indifference to or conscious disregard for a person's own safety or the safety or property of others" (Bowden, 304 Ill.App.3d at 280, 237 Ill. Dec. 918, 710 N.E.2d 548) ], such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." [Citation.]' [Citation.]" American National Bank & Trust Co., 192 Ill.2d at 285, 248 Ill.Dec. 900, 735 N.E.2d 551.
See also Mostafa v. City of Hickory Hills, 287 Ill.App.3d 160, 170, 222 Ill.Dec. 513, 677 N.E.2d 1312 (1997); Ozuk v. River Grove Board of Education, 281 Ill.App.3d 239, 245, 217 Ill.Dec. 18, 666 N.E.2d 687 (1996). Where a landowner "`takes no action to correct a condition even though it was informed about the dangerous condition and knew that other persons had previously been injured because of the dangerous condition,' [citation]" he may be liable for wilful and wanton conduct. Bialek v. Moraine Valley Community College School District. No. 524, 267 Ill.App.3d 857, 865, 204 Ill.Dec. 924, 642 N.E.2d 825 (1994). However, when the plaintiff fails to plead facts or allegations that the landowner engaged in any intentional act or knew of other injuries or accidents caused by the allegedly dangerous condition, his conduct does not rise to the level of wilful and wanton conduct. Bialek, 267 Ill. App.3d at 865, 204 Ill.Dec. 924, 642 N.E.2d 825.
Generally, those cases that have addressed dangerous conditions on property that have resulted in an injury to a trespasser involved railroad tracks, electrified rails, electric lines or wires, water hazards, or defects in floors or ground. See, e.g., Lee v. Chicago Transit Authority, 152 Ill.2d 432, 178 Ill.Dec. 699, 605 N.E.2d 493 (1992) (electric rail); Eshoo v. Chicago Transit Authority, 309 Ill.App.3d 831, 243 Ill.Dec. 307, 723 N.E.2d 339 (1999) (electric rail); Mostafa, 287 Ill.App.3d 160, 222 Ill. Dec. 513, 677 N.E.2d 1312 (lagoon); Ozuk, 281 Ill.App.3d 239, 217 Ill.Dec. 18, 666 N.E.2d 687 (warped and uneven gym floor); Carter v. New Trier East High *372 School, 272 Ill.App.3d 551, 208 Ill.Dec. 963, 650 N.E.2d 657 (1995) (hole in ground of tennis court); McKinnon v. Northeast Illinois Regional Commuter R.R. Corp., 263 Ill.App.3d 774, 200 Ill.Dec. 405, 635 N.E.2d 744 (1994) (railroad tracks); Rodriguez v. Norfolk & Western Ry. Co., 228 Ill.App.3d 1024, 170 Ill.Dec. 708, 593 N.E.2d 597 (1992) (train track); Miller v. General Motors Corp., 207 Ill.App.3d 148, 152 Ill.Dec. 154, 565 N.E.2d 687 (1990) (electrical wires); Knyal v. Illinois Power Co., 169 Ill.App.3d 440, 119 Ill.Dec. 883, 523 N.E.2d 639 (1988) (electric lines). However, these cases did not involve an injury, as here, based upon criminal conduct, but rather injury from the dangerous condition existing upon the land. None of these cases supports plaintiff's theory for imposing a duty upon defendants here.
Moreover, generally, those cases that have addressed conditions of property that had fostered criminal conduct, which resulted in injury to others and may have rendered the owner liable, involved landlord/tenant situations where a condition of the premises enabled an intruder to enter into an apartment and attack the tenant, school or public grounds upon which some criminal conduct, usually a shooting, occurred, or store/tavern/restaurant owners where a patron had been attacked on or near the premises.
All of the situations above are distinguishable from the case before us, not only factually, but also based upon the duty owed by the defendants to the plaintiff here. A landlord owes a duty to its tenants to maintain the common areas in a reasonably safe condition. Duncavage v. Allen, 147 Ill.App.3d 88, 96, 100 Ill.Dec. 455, 497 N.E.2d 433 (1986). Public entities, including schools, owe a duty of ordinary care to individuals upon their property. Lawson v. City of Chicago, 278 Ill. App.3d 628, 640, 215 Ill.Dec. 237, 662 N.E.2d 1377 (1996). Additionally, store, tavern, or restaurant owners owe a duty of ordinary care to their business invitees. Deibert v. Bauer Brothers Construction Co., 141 Ill.2d 430, 437, 152 Ill.Dec. 552, 566 N.E.2d 239 (1990). In the instant case, defendants only owe a duty to refrain from wilful and wanton conduct. Moreover, the cases dealing with conditions of property that have fostered criminal conduct involved circumstances where the victims were lawfully upon the property. Additionally, even in the situations described above, the owner has generally been found not liable except for in rare factual circumstances. See Duncavage, 147 Ill.App.3d at 96-98, 100 Ill.Dec. 455, 497 N.E.2d 433 (under the particular facts of the case, the defendant owed a duty to the victim who was attacked and killed in her apartment based on the fact that the defendant knew the exterior lights outside the apartment were out, weeds in the yard were high enough to conceal a person, and there was a ladder in the yard (which the intruder used in Duncavage to access the victim's apartment) that had been used on a previous occasion to burglarize the same apartment through the same unlocked window); Stribling v. Chicago Housing Authority, 34 Ill.App.3d 551, 555-56, 340 N.E.2d 47 (1975) (where the plaintiffs were victims of three burglaries and the burglars entered the plaintiffs' apartment by demolishing a part of the wall between the plaintiffs' unit and adjacent vacant units, the defendant was notified that the vacant apartments were being used and was requested to secure the apartments, but failed to do so, the court concluded that, "[g]iven the bizarre facts" of the case, the defendant was liable for the second and third burglaries since after the first burglary, it was foreseeable that similar conduct would occur). But see Lawson, 278 Ill.App.3d at 642, 215 Ill.Dec. 237, 662 N.E.2d 1377 (school board had no duty to protect a student from *373 criminal attack by a trespassing student on school grounds even though the board had knowledge that the trespassing student had previously been arrested on the grounds for trespassing and gambling because these two incidents were insufficient to charge the board with knowledge that the student would enter the property and harm another student and there were no allegations of prior shootings or confiscation of guns on the school properties); Hill v. Charlie Club, Inc., 279 Ill.App.3d 754, 758-59, 216 Ill.Dec. 261, 665 N.E.2d 321 (1996) (hotel had no duty to protect visitor from criminal attack); Ignarski v. Norbut, 271 Ill.App.3d 522, 527, 207 Ill.Dec. 829, 648 N.E.2d 285 (1995) (restaurant owner had no duty to protect customer from criminal attack as he was leaving restaurant); N.W. v. Amalgamated Trust & Savings Bank, Trust No. 4015, 196 Ill.App.3d 1066, 1077, 143 Ill.Dec. 694, 554 N.E.2d 629 (1990) (landlord had no duty to protect tenant from sexual assault). Or, where the owner voluntarily undertook some duty to protect individuals upon its property, such as hiring a security firm, the owner may be held liable for third party attacks. See, e.g., Pippin v. Chicago Housing Authority, 78 Ill.2d 204, 35 Ill.Dec. 530, 399 N.E.2d 596 (1979); Hernandez v. Rapid Bus Co., 267 Ill.App.3d 519, 204 Ill.Dec. 456, 641 N.E.2d 886 (1994); Marshall v. David's Food Store, 161 Ill.App.3d 499, 113 Ill.Dec. 325, 515 N.E.2d 134 (1987).
Contrary to plaintiff's contention, the relationship between the landowner and injured party, and foreseeability, are questions relevant to whether any duty is owed by a defendant. As stated by the court in Osborne v. Stages Music Hall, Inc., 312 Ill.App.3d 141, 244 Ill.Dec. 753, 726 N.E.2d 728 (2000):
"`Whether a duty exists is also an inquiry shaped by public policy [citations] since we must decide whether defendant and plaintiff stand in such a relationship to one another that the law imposes on defendant an obligation of reasonable conduct for the benefit of plaintiff [citation]. Accordingly, we consider not only the reasonable (1) foreseeability and (2) likelihood of injury, but also (3) the magnitude of the burden on defendant in guarding against injury and (4) the consequences of placing that burden on defendant.' [Citation.]" (Emphasis added.) Osborne, 312 Ill.App.3d at 146-47, 244 Ill.Dec. 753, 726 N.E.2d 728.
See also Charleston v. Larson, 297 Ill. App.3d 540, 546, 231 Ill.Dec. 497, 696 N.E.2d 793 (1998); Hill, 279 Ill.App.3d at 758-59, 216 Ill.Dec. 261, 665 N.E.2d 321 (both setting forth the same general principles of law).
Generally, a property owner has no duty to protect individuals upon his property from criminal activity unless a special relationship exists, e.g., that of carrier-passenger, innkeeper-guest, business invitee and invitee, or "one who voluntarily takes custody of another in such a manner that it deprives the person of his normal opportunities for protection." Osborne, 312 Ill.App.3d at 146, 244 Ill.Dec. 753, 726 N.E.2d 728. Even if a special relationship exists, a landowner is not liable for criminal conduct unless the incident is reasonably foreseeable. Osborne, 312 Ill.App.3d at 147, 244 Ill.Dec. 753, 726 N.E.2d 728. To be reasonably foreseeable, the conduct must be "`objectively reasonable to expect, not merely what might conceivably occur.' [Citation.]" Osborne, 312 Ill.App.3d at 147, 244 Ill.Dec. 753, 726 N.E.2d 728. Moreover, "`[s]ince anyone can foresee the commission of a crime virtually anywhere at any time * * * [t]he question is not simply whether a criminal event is foreseeable, but whether a duty exists to take measures to guard against it.' (Emphasis in original) [Citation.]" Osborne, 312 Ill. *374 App.3d at 147, 244 Ill.Dec. 753, 726 N.E.2d 728. See Rowe v. State Bank of Lombard, 125 Ill.2d 203, 224, 126 Ill.Dec. 519, 531 N.E.2d 1358 (1988) ("There is an exception [to nonliability for criminal conduct] where the defendant's acts or omissions create a condition conducive to a foreseeable intervening criminal act. If the criminal act is foreseeable at the time of the negligence, the causal chain is not necessarily broken by the intervention of such an act"). See also Hills v. Bridgeview Little League Ass'n, 195 Ill.2d 210, 242, 253 Ill.Dec. 632, 745 N.E.2d 1166 (2000); Elizondo v. Ramirez, 324 Ill.App.3d 67, 72, 257 Ill.Dec. 497, 753 N.E.2d 1123 (2001); Landeros v. Equity Property & Development, 321 Ill. App.3d 57, 64, 254 Ill.Dec. 351, 747 N.E.2d 391 (2001) (all holding that there is no duty to protect an individual upon the landowner's property unless a special relationship exists and the conduct is foreseeable).
Here, plaintiff is actually asking this court to ignore these well-established and long-standing principles discussed above and to carve out an exception to a landowner's duty with respect to criminal conduct, specifically for the benefit of a trespasser. In fact, plaintiff's counsel conceded at oral argument before this court that he was asking us to eliminate the special relationship requirement based on the particular facts of this case. No case in Illinois has gone so far as to create a legal duty on a landowner for third party conduct such as plaintiff seeks here. Moreover, plaintiff has provided this court with no legal authority upon which we could do so, nor has he even argued that an extension of the general rule should be made or exception to the general rule created based on analogous or existing case law. Plaintiff has cited no case to support a conclusion that an artificial condition on a property makes the owner liable for criminal conduct that has occurred on the property. The cases plaintiff does rely on involved imposition of liability upon a landlord for attacks on their tenants. As noted above, a landlord owes a different duty and the facts in those cases were unique.
Based on the law as it exists today, we find that plaintiff failed to state a cause of action against defendants based on their alleged wilful and wanton conduct in failing to protect decedent from criminal attacks fostered by the condition of defendants' property. In his argument, plaintiff entirely skirts the issue of intervening criminal conduct. We cannot, however, do so. Clearly, plaintiff cannot allege facts demonstrating a special relationship between decedent and defendants. Decedent was a trespasser. Again, Illinois law is very limited in imposing a duty upon a landowner to protect individuals from criminal attacks by third parties. This is true even where some condition of the property or element inherent therein may foster a condition conducive to criminal activities. See Popp v. Cash Station, Inc., 244 Ill.App.3d 87, 93, 184 Ill.Dec. 558, 613 N.E.2d 1150 (1992) (owner of ATM machines owed no duty to warn customers of criminal hazards or provide security even though ATMs may draw criminal attacks because they are located in remote locations and large sums of money are available); Rodgers v. Hook-SuperX, Inc., 204 Ill.App.3d 861, 864, 149 Ill.Dec. 894, 562 N.E.2d 358 (1990) (no duty to protect customer from attack in parking lot); Taylor v. Hocker, 101 Ill.App.3d 639, 642, 57 Ill. Dec. 112, 428 N.E.2d 662 (1981) (no duty to protect customers in parking lot from criminal attacks).
Moreover, plaintiff failed to allege facts sufficient to establish foreseeability of the conduct in question. In this regard, "generalized allegations of crime will not suffice to establish that future criminal *375 attacks are foreseeable." Popp, 244 Ill. App.3d at 93, 184 Ill.Dec. 558, 613 N.E.2d 1150. Compare Popp, 244 Ill.App.3d at 93, 184 Ill.Dec. 558, 613 N.E.2d 1150 (allegation that 1,500 to 5,000 criminal attacks occurred on ATM customers nationwide annually insufficient to make criminal attack upon the plaintiff foreseeable); Petrauskas, 186 Ill.App.3d at 829, 134 Ill. Dec. 556, 542 N.E.2d 902 (allegations that building in "high crime area" and that another person had been shot "across the street" insufficient to make criminal attack foreseeable) with Duncavage, 147 Ill. App.3d at 97-98, 100 Ill.Dec. 455, 497 N.E.2d 433 (allegation that same ladder had been used to enter and burglarize the same apartment through the same unlocked window sufficient to establish foreseeability); Stribling, 34 Ill.App.3d at 555-56, 340 N.E.2d 47 (allegation that three burglaries were committed by gaining entrance to apartment by demolishing walls between apartment and adjacent vacant apartments sufficient to establish foreseeability of subsequent burglaries).
In the instant case, while plaintiff alleged numerous and various criminal activities that occurred on the property over the years, none of the conduct involved murder. In fact, only one of the incidents involved a personal injury (not motor vehicle related). However, there is no allegations as to what caused that injury, whether it occurred on the property, or whether it was caused by someone else on the property. Moreover, none of the incidents alleged by plaintiff involved crimes of violence or violent conduct against another individual. Without such allegations, plaintiff's claim cannot stand. See Kolodziejzak v. Melvin Simon & Associates, 292 Ill.App.3d 490, 497, 226 Ill.Dec. 530, 685 N.E.2d 985 (1997) (where no evidence of prior incidents of gang intimidation, gangrelated violence, or brandishing of weapons by gang members on property and prior incidents involved retail theft, two robberies, and other gang incidents not involving violence, evidence was insufficient to put the defendant on notice of the likelihood of a gang member entering the property and shooting an innocent person); Lawson, 278 Ill.App.3d at 642, 215 Ill.Dec. 237, 662 N.E.2d 1377 (prior arrests of student unlawfully on premises for gambling and trespass insufficient to put defendant on notice that student would enter the property and harm or shoot another person; plaintiff failed to allege prior shootings or prior confiscation of guns on school property); Ignarski, 271 Ill.App.3d at 527, 207 Ill.Dec. 829, 648 N.E.2d 285 (complaint failed to allege any prior criminal act, let alone similar conduct).
This court has no authority to impose a duty upon defendants that would have required them to protect decedent from criminal attacks based on the dilapidated condition of defendants' property. Although the facts of this case may warrant such an extension, we simply cannot do so. However, we urge the legislature (or the supreme court) to consider such a duty. What we have in this case are nonresident landowners who have allowed their property to fall into a complete state of disrepair, with various citations being issued to them over quite a few years concerning the condition of the premises. Defendants did nothing to rectify the situation. Rather than repair and/or secure the structure or surrounding perimeter, defendants, like many other landowners in this city, await the government or municipality's response by condemning the property and tearing down any structures at its cost. This is precisely what occurred in the instant case. Approximately three months after decedent's death, defendants' property was condemned and torn down. Based on the law as it exists today, no amount of notice or knowledge by a landowner that, because *376 its property is in such a state of disrepair, vagrants live on it and commit criminal acts, would impose any duty upon the owner to protect individuals entering thereupon, irrespective of their entry status. This court, however, is not the proper forum to impose such a duty under the strictures of precedent.

CONCLUSION
For the reasons stated, we affirm the judgment of the circuit court of Cook County.
Affirmed.
CAHILL and McBRIDE, JJ., concur.
NOTES
[1] Although defendant Leroy Davis Truck Service, Inc. filed a special and limited appearance in the trial court, there is no evidence in the record of the status of its presence or absence in this case. Similarly, there is no evidence as to the status of Crown Engineering or Unknown Owners.
[2] The complaints included the following offenses or disturbances on the property: 4 burglaries; 14 motor vehicle-related complaints and 2 additional complaints involving injuries with respect to motor vehicles; 5 fires; 3 suspicious persons; 3 disturbances; 1 open gate; 1 injured individual (unspecified); 1 flood; 4 suspicious activities; 1 trespass; 4 thefts; 1 warrant arrest; 1 illegal dumping; and 5 unidentified complaints.